# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GHASSAN SALIM SARDY,

Defendant-Appellant.

FOR PUBLICATION
December 29, 2015
9:00 a.m.

No. 319227
Oakland Circuit Court
LC No. 2013-244734-FH

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

MURPHY, P.J.

Defendant was convicted by a jury of child sexually abusive activity (CSAA), MCL 750.145c, using a computer to commit a crime, MCL 752.796, and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c. The victim of these crimes was defendant's young daughter. Defendant was sentenced to concurrent prison terms of 71 months to 20 years for the CSAA and computer-crime convictions and 71 months to 15 years for the CSC II convictions. Defendant appeals as of right. We affirm defendant's convictions, but remand to address a sentencing matter pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. BASIC FACTS

Defendant is the biological father of the victim. Defendant and the victim's mother were not married, and they were residing in different homes when the child made claims to her mother regarding inappropriate sexual behavior by defendant. The child's mother contacted law enforcement, which led to a forensic interview of the child and the execution of a search warrant at defendant's home. In executing the warrant, the police seized computers, including an Apple iMac, external hard drives, numerous CDs, a diskette, multiple SD (storage data) cards, two cellular phones, including an iPhone 4, and a flash drive. A detective, who was qualified as an expert in computer forensic examinations, testified that, for the most part, examination of these items did not reveal any suspicious activities. He did, however, discover a CD with nude images

-1-

of the child in the bathtub and bathroom.[1]  Additionally, the detective retrieved two suspicious videos, created seven minutes apart, that had been filmed using defendant's iPhone 4.  These videos were additionally stored on the iMac and an external hard drive, and they formed the basis of the CSAA and computer-crime charges.  The victim was clothed in both videos, and in one video, the child is observed, as described by the detective, "grinding . . . on the couch," with defendant "focusing [the camera] on her rear end."[2]  The detective opined that the child's act entailed manual manipulation of the genitals, and the prosecution characterized the victim's actions as constituting masturbation for purposes of the charges.  In the video, defendant is heard asking the child why she was engaging in the act, and she responded, "because it's comfortable." When defendant then asked her why it was comfortable, the child expressed that it felt good. With respect to the second video, the child is seen grinding against the couch with one hand under her body on her genitals.  The child's mother testified to having once observed the child with "her hands between her legs and . . . gyrating on the bed," and when she told the child to stop, the child responded that "she was allowed to" engage in the behavior.

In preliminary examination testimony that was eventually submitted to the jury during the trial after the trial court found that the victim had become unavailable due to lack of memory, the child, seven at the time of the preliminary examination, testified that defendant would watch her as she bathed in the shower and when she used the toilet.  The victim also testified regarding a couple of instances in which, while both were clothed, defendant pressed his penis against the child's genital area, which conduct formed the basis of the two counts of CSC II.  One of the assaults occurred on a couch in defendant's home as defendant lay on top of the child, who believed that she was in first grade at the time.  The other sexual assault occurred when defendant entered the child's bedroom where she lay, lied down on her bed under the covers, and then maneuvered his body such that the two were on their sides facing each other and making direct contact.

## II.  CONSTITUTIONAL RIGHT OF CONFRONTATION

## A.  GENERAL GOVERNING LEGAL PRINCIPLES AND BACKGROUND INFORMATION

On appeal, defendant first argues that the trial court violated his constitutional right to confront the witnesses against him when it permitted the victim's preliminary examination testimony to be admitted as substantive evidence at trial.  Defendant contends that the victim was not "unavailable" as required to admit the evidence, that the victim's testimony at the preliminary examination was unsworn and thus unusable, given that she had not been placed under oath before testifying, and that the preliminary examination did not provide defendant a

---

[1] While some of these images are disturbing, including a photo that is focused entirely on the child's buttocks while in the bathtub and a photo showing the child touching her genitals, they did not directly form the basis of any of the charges.

[2] The video was played as the detective testified to his interpretation of the events filmed by defendant.

full and fair opportunity at cross-examination. We reject each of these arguments as a basis for reversal.

We review de novo the question whether a defendant was denied the constitutional right to confront complaining witnesses. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). Under the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. Similarly, under the Michigan Constitution, "[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her[.]" Const 1963, art 1, § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker (On Remand)*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006), citing *Crawford v Washington*, 541 US 36, 59, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004) ("Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.").[3] We are unaware of any precedent suggesting that the right of confrontation under the Michigan Constitution is to be analyzed any differently than the Sixth Amendment's Confrontation Clause. In *People v Nunley*, 491 Mich 686, 697-698; 821 NW2d 642 (2012), our Supreme Court observed:

> The Confrontation Clause is "primarily a functional right" in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials. Functioning in this manner, "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused."
>
> The specific protections the Confrontation Clause provides apply "only to statements used as substantive evidence." In particular, one of the core protections of the Confrontation Clause concerns hearsay evidence that is "testimonial" in nature. The United States Supreme Court has held that the introduction of out-of-court testimonial statements violates the Confrontation Clause; thus, out-of-court testimonial statements are inadmissible unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant. [Citations omitted.]

Of course, testimony given at a preliminary examination qualifies as being testimonial in nature, *id.* at 698-699; *Crawford*, 541 US at 68; therefore, it was necessary to establish that the victim here was unavailable at trial and that defendant had an opportunity to cross-examine the victim at the preliminary examination.

---

[3] The Confrontation Clause of the Sixth Amendment is applicable to the states via the Due Process Clause of the Fourteenth Amendment. *Tennessee v Lane*, 541 US 509, 523; 124 S Ct 1978; 158 L Ed 2d 820 (2004).

At the preliminary examination, the victim testified absent oath or affirmation. When the victim first took the stand, the prosecutor asked her a few preliminary questions for the purpose of establishing that the child could distinguish truth from lies. The victim answered appropriately, and the district court responded in the affirmative when the prosecutor asked the court for permission to proceed with the questioning of the child. Defendant failed to voice any objection to the unsworn testimony that followed, allowing the child's testimony to be fully developed. The victim was subject to extensive cross-examination by defense counsel, encompassing nearly 70 pages of transcript. Defendant's attorney grilled the child with questions regarding her ability to tell the truth and to distinguish between fact and fabrication. Midway through cross-examination, defense counsel asked the victim whether she had "been telling the truth so far," and the victim replied, "Yes." The child also stated: "I'm telling the truth;" "I'll tell the truth;" and "I'll still tell the truth." The victim further testified how several people had told her to simply tell the truth when she testified.

At the trial, the victim took the stand and testified to foundational and peripheral matters; however, when the questioning turned to defendant's conduct that formed the heart of the prosecutor's case, the victim indicated that she could not remember what had occurred. Efforts by the prosecution to refresh the child's memory through reference to the preliminary examination transcript were unsuccessful. Outside the presence of the jury, the trial court and the attorneys engaged in an extensive colloquy regarding how to proceed, with the court entertaining arguments concerning the propriety of having the victim's preliminary examination testimony read to the jurors. The trial court and the parties also made direct inquiries to the child herself, seeking to understand whether she could not remember what had transpired or whether she simply refused or did not want to testify about defendant's conduct. The child was adamant that she could not remember the events giving rise to the charges, and the trial court concluded that, due to lack of memory, the child was "unavailable." The trial court ruled in favor of admitting the victim's preliminary examination testimony, rejecting defendant's arguments that counsel did not have a full and fair opportunity to cross-examine the victim at the preliminary examination and that the failure to place the victim under oath at the examination barred admission.

B. UNAVAILABILITY

We initially address defendant's argument that the trial court erred in finding that the child was "unavailable" for purposes of confrontation analysis. The gist of defendant's argument is that, given all of the surrounding circumstances, the child was feigning a lack of memory and therefore she was not unavailable contrary to the trial court's ruling. We fail to see the relevancy of defendant's argument, considering that had the trial court instead found that the child was intentionally refusing to testify or was too scared or distressed to testify, she still would have qualified as "unavailable" as explained below. In examining a Confrontation Clause argument and determining whether a person is unavailable as part of that analysis, it is proper to consider MRE 804(a), which addresses hearsay exceptions relative to unavailable witnesses and sets forth situations in which a witness is properly deemed "unavailable." See *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). A trial court's factual finding on the issue of unavailability is reviewed for clear error. *Id.*

A witness or declarant is unavailable when "the declarant . . . has a lack of memory of the subject matter of the declarant's statement[.]" MRE 804(a)(3). The trial court and the parties thoroughly quizzed the victim regarding whether she truly could not testify on the relevant matters due to lack of memory, and the child was steadfast in asserting that lack of memory was the reason for her inability to so testify. Indeed, even defense counsel conceded below, "I believe [that] the record speaks for itself that she has no recollection." On the existing record, we conclude that the trial court did not clearly err in finding the victim unavailable based on lack of memory, especially given the trial court's special opportunity to judge the victim's credibility. MCR 6.001(D); MCR 2.613(C).

Moreover, a witness or declarant is also unavailable when "the declarant . . . persists in refusing to testify concerning the subject matter of the declarant's statement . . . [.]" MRE 804(a)(2). If the trial court had determined that the child was fabricating in claiming failed memory and that she was instead refusing to testify, it is abundantly clear from the record that the child would still not have testified on the relevant matters even if ordered. Additionally, in *People v Duncan*, 494 Mich 713, 717; 835 NW2d 399 (2013), our Supreme Court held "that when a child attempts to testify but, because of her youth, is unable to do so because she lacks the mental ability to overcome her distress, the child has a 'then existing . . . mental . . . infirmity' within the meaning of MRE 804(a)(4) and is therefore unavailable as a witness." (Ellipses in original.)[4] To the extent that the victim in the present case was unable to testify because of her youth and the absence of the mental ability to overcome distress, she would also qualify as being unavailable under MRE 804(a)(4).[5] It is also plain that additional attempts to accommodate the victim, e.g., allowing her to testify via closed-circuit television, would have been futile, considering that despite the enormous efforts by the trial court and the attorneys to procure the child's testimony, she was not prepared to testify on the basis of lack of memory. See *Duncan*, 494 Mich at 729 (urging courts, "when appropriate," to use "the tools in our court rules and statutes to accommodate young witnesses"). We note our reference in the preceding sentence to "additional" attempts to accommodate the child, as the trial court did close the courtroom during her testimony and permitted a victim support advocate to be present for the child's mental well-being. Reversal is unwarranted.

---

[4] Pursuant to MRE 804(a)(4), a declarant is unavailable if he or she "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity[.]"

[5] We note that in *Duncan* a child CSC complainant had competently testified at the preliminary examination, but she faltered at the defendants' trial. Our Supreme Court solely addressed the issue regarding whether the CSC complainant was unavailable under MRE 804(a)(4) after this Court had affirmed the circuit court's decision that the complainant was not unavailable. *Duncan*, 494 Mich at 717-722. Ruling that she was unavailable under MRE 804(a)(4), the Supreme Court remanded the case for a determination "whether the complainant's preliminary examination testimony satisfie[d] the requirements of MRE 804(b)(1) and, if so, whether admission of that testimony would violate defendants' rights under the Confrontation Clause." *Id.* at 717. The Court found that the child complainant's "emotional distress made it impossible for her to testify," as "highlighted by the fact that she had previously been able to give testimony about the alleged sexual contacts at issue[.]" *Id.* at 728-729.

-5-

## C. FULL AND FAIR OPPORTUNITY AT CROSS-EXAMINATION

We next address defendant's argument that his confrontation rights were infringed because the preliminary examination did not provide defendant a full and fair opportunity at cross-examination. More specifically, defendant complains that counsel lacked the ability or opportunity to examine discovery materials prior to the preliminary examination, encompassing those materials subject to a protective order and "a thumb drive containing all of [the] . . . computer forensic analysis" compiled by the detective who testified as an expert in computer forensic examinations. Defendant further contends that the purpose of cross-examination at a preliminary examination differs substantially from the purpose of cross-examination at trial and that the district court had improperly curtailed cross-examination with respect to relevant issues of motive and bias. We hold that these arguments are unavailing.

The constitutional right of confrontation solely guarantees an opportunity for effective cross-examination, not cross-examination that is effective to whatever extent and in whatever way a defendant wishes. *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988). The United States Supreme Court has recognized that while a preliminary examination "is ordinarily a less searching exploration into the merits of a case than a trial," the Confrontation Clause can be satisfied if a defendant's cross-examination of the witness at the prelim was not significantly limited in scope or nature and the witness was actually unavailable at trial. *California v Green*, 399 US 149, 166; 90 S Ct 1930; 26 L Ed 2d 489 (1970).

In regard to defendant's assertion that the district court had improperly curtailed cross-examination with respect to issues of motive and bias, the line of questioning cited by defendant, which the district court had found irrelevant, pertained to why the child had come to believe that her mother did not like defendant. In his appellate brief, defendant provides no elaboration whatsoever explaining his theory that the questioning went to the issues of motive and bias. But we assume that defendant is suggesting that the child was biased against defendant and may have had a motive to lie about the sexual assaults based on the nature of her parents' relationship, i.e., she falsely accused defendant of sexual misconduct in order to gain favor with or please her mother. We first note that the victim's mother testified at trial, and defendant had ample opportunity during cross-examination to explore this avenue from that perspective. Moreover, defendant ignores the fact that the jurors were read preliminary examination testimony in which the child testified that she "always wanted to stay with [her] mom," that she never wanted to go with defendant, and that her mother did not like defendant. This was more than adequate evidence from which to formulate and present an argument predicated on bias and ill-motive, and we fail to see how questioning regarding *why* the child's mother disliked defendant was of any real relevance, assuming that the child even had sufficient personal knowledge to answer that question. The exclusion of the testimony, even if constituting evidentiary error, did not reflect a significant limitation with respect to the scope and nature of defendant's cross-examination of the child. Accordingly, defendant's argument does not suffice to establish a violation of his confrontation rights.

With respect to defendant's argument that the purpose of cross-examination at a preliminary examination differs substantially from the purpose of cross-examination at trial, he again provides no elaboration in support of the argument. In the context of this case, we conclude that the purpose of cross-examination at the preliminary examination and at the trial

was essentially identical, which was to attempt to show that the sexual assault and impropriety claims were untrue, resulting from improper coaching, a problematic forensic examination, the confused mind of a child spinning outlandish tales, and/or a purposeful attempt by the child to imperil her father. As mentioned earlier, defense counsel took full advantage of cross-examination of the victim at the preliminary examination in exploring these areas and was extremely thorough.

We next reject defendant's argument that he lacked the ability to review discovery materials prior to the preliminary examination, encompassing those materials subject to a protective order and a thumb drive containing information regarding the computer forensic examination. The record reflects that discovery materials were the subject of a motion the week prior to the preliminary examination and were made available for defendant's review at the Troy Police Department. Apparently, defendant chose not to take advantage of reviewing the materials despite the ability to do so, and he fails to explain on appeal why review of the discovery materials was not pursued. Indeed, except as to the thumb drive, defendant fails to even identify in his appellate brief the specific discovery materials that would have assisted in the cross-examination of the victim, let alone explain how familiarity with the particular discovery materials would have been beneficial in cross examining the victim. With respect to the thumb drive, the prosecution noted at the preliminary examination that it had previously identified the thumb drive in an answer to defendant's motion for discovery. And the thumb drive was admitted into evidence on the first day of a two-day preliminary examination; the second day of which took place *three weeks after* day one, yet defendant did not seek to reopen examination of the victim. Additionally, the prosecutor indicated, absent assertion to the contrary, that the thumb drive, like the other discovery materials, had been made available for defendant's review at the Troy Police Department before the preliminary examination was conducted. Finally, the importance of the thumb drive has to be assessed in the context of the cross-examination of the victim, not the case in general. The thumb drive pertained mainly to the prosecution's case regarding the CSAA and computer-crime charges, not the two CSC II counts. And the victim's testimony was focused on the CSC II charges, not the CSAA and computer-crime charges. Therefore, the relevance of the thumb drive to the cross-examination of the victim was minimal. Accordingly, the claimed inability to review the thumb drive prior to the preliminary examination did not constitute a significant limitation with respect to the scope and nature of defendant's cross-examination of the child.

## D. OATH OR AFFIRMATION – VICTIM'S UNSWORN TESTIMONY

We next address the argument that defendant's confrontation rights were violated because the victim never declared at the preliminary examination, by oath or affirmation, that she would testify truthfully. See MRE 603 ("Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so."); MCL 600.1432(1) (addressing administration of an oath to a witness); MCL 600.1434 (addressing affirmation as an alternative to an oath). "[W]itnesses in judicial proceedings must swear or affirm that their testimony will be true." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

Michigan Model Criminal Jury Instruction (M Crim JI) 5.9 currently provides that "[f]or a witness who is a young child, a promise to tell the truth takes the place of an oath to tell the truth." The "Use Note" for the instruction states that "[t]his instruction is based on former MCL 600.2163, repealed by 1998 PA 323, eff. Aug. 3, 1998." MCR 2.512(D)(2) provides that "instructions approved by the . . . Committee on Model Criminal Jury Instructions . . . must be given in each action in which jury instructions are given if (a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party." Of course, M Crim JI 5.9 would generally have no direct application in regard to a preliminary examination, as there is no jury to instruct. The trial court did instruct the jury on M Crim JI 5.9 *at the trial* in light of the child's limited live testimony, where the child promised the trial court to tell the truth without an oath being administered. Defendant voiced no objection to the child's simple promise to tell the truth or to the associated instruction. MRE 603, MCL 600.1432, and MCL 600.1434 do not contain language comparable to that found in M Crim JI 5.9. However, this Court, in examining the concept of affirmation, has held:

> Neither MCL 600.1434 nor MRE 603 mandates special words or actions before a witness may testify; each requires only a simple affirmation *or promise to tell the truth*. Thus, as long as . . . [the witness's] promise to testify truthfully was minimally sufficient, the trial court was required to allow her testimony. [*Donkers v Kovach*, 277 Mich App 366, 374; 745 NW2d 154 (2007) (emphasis added) (witness was not required to raise her right hand in affirming or promising to tell the truth); see also *Putman*, 309 Mich App at 244-245.]

Therefore, M Crim JI 5.9 is not inconsistent with MCL 600.1434 or MRE 603, and a simple promise by a young child to tell the truth would appear to comport with the statute and rule of evidence. Nevertheless, to the extent that the victim's statement that she would "tell the truth" constituted a "promise" to tell the truth at the preliminary examination, the statement was not made until cross-examination was partially concluded and well after the prosecutor had elicited the inculpatory testimony. While at the commencement of the child's testimony she showed her ability to distinguish truth from lies on questioning by the prosecutor, the district court and the prosecutor failed, clearly inadvertently, to take the one extra step to obtain a promise or affirmation to tell the truth. For the reasons explained below, reversal of defendant's convictions is not necessary because of this unobjected-to error.[6]

---

[6] Defendant couches his argument concerning the unsworn testimony solely within the context of an alleged Confrontation Clause violation. We question whether the issue regarding the unsworn testimony is even relevant *for purposes of confrontation analysis under Crawford*. It is true that, generally speaking, " 'the right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness.' " *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001) (citation omitted). However, within the framework of a *Crawford* analysis for purposes of confrontation, where the focus is on a statement made by a witness *who does not appear at trial*, the relevant inquiry entails whether the statement was testimonial in nature, whether the witness was unavailable for trial, and whether there was a previous opportunity to cross-examine the

Although defendant argues that his right of confrontation was violated by the admission of the victim's preliminary examination testimony, defendant makes no attempt whatsoever to address questions concerning whether the error was structural, whether the error was waived and thus not appealable, whether the error was forfeited, whether, if forfeited, the plain-error test precludes or requires reversal, whether the error was preserved, and, if preserved, whether the harmless-error test precludes or requires reversal. Clearly, at least one of these principles must be applicable, yet defendant engages in no legal analysis regarding any of the principles.

With respect to structural-error analysis, it perhaps can be implied that defendant's position is that structural error occurred, considering that he argues error and then simply demands reversal.[7] But even giving defendant the benefit of this implication, our Supreme Court has stated as follows:

witness. *Crawford*, 541 US at 59, 68. Resolution of a confrontation dispute under *Crawford* is not governed or controlled by whether the witness made the statement under oath or whether the witness's demeanor while making the statement was observable by the jury. For example, unless an out-of-court statement made by a witness was videotaped, with the jury being shown the video, a jury typically is unable to observe the demeanor of a witness when he or she made an out-of-court statement, yet *Crawford* allows for the admission of the statement if the witness was unavailable at trial and subject to prior cross-examination. This is true despite the fact that ordinarily the right of confrontation allows jurors to observe the demeanor of a witness. *Watson*, 245 Mich App at 584. Similarly, in a *Crawford* setting, whether a statement was sworn or unsworn has little to do with determining if a Confrontation Clause violation occurred. The United States Supreme Court has held that the absence of an oath is not dispositive in deciding whether a statement is testimonial in nature. *Bullcoming v New Mexico*, __ US __; 131 S Ct 2705, 2717; 180 L Ed 2d 610 (2011); *Crawford*, 541 US at 52. Thus, an unsworn statement may be admitted against a defendant if the statement is not actually testimonial in nature *or* when the unsworn statement is testimonial, but the statement was made by a now-unavailable witness whom the defendant had a prior opportunity to cross-examine. Under a *Crawford* analysis, the fact that the prosecution elicited unsworn testimony from the victim in the instant case does not appear to equate to an infringement of defendant's right of confrontation. While outside the context of confrontation and *Crawford* there may have been a problem with admitting the preliminary examination testimony under MRE 804(b)(1) (hearsay exception – "former testimony" by unavailable declarant) or under a straight application of MRE 603, defendant does not frame the argument in such a manner. Despite our reservations outlined in this footnote, we shall proceed on the basis that an error occurred.

[7] As explained by the Supreme Court in *People v Duncan*, 462 Mich 47, 51-52; 610 NW2d 551 (2000):

Structural errors . . . are intrinsically harmful, without regard to their effect on the outcome, so as to require automatic reversal. Such an error necessarily renders unfair or unreliable the determining of guilt or innocence. . . . [S]tructural errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. [Citations omitted.]

"It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." [*Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) (citation omitted).]

Furthermore, a structural-error approach relative to the unsworn testimony is not consistent with caselaw.

In *People v Kemmis*, 153 Mich 117, 117-118; 116 NW 554 (1908), our Supreme Court addressed a case in which a 10-year-old witness "was permitted to give his testimony without being sworn." And "[n]o exception was taken." *Id*. at 118. On appeal, the defendant, in seeking reversal of his conviction, argued that "the testimony was improperly received." *Id*. The Supreme Court held, "We dispose of this contention by saying that it was not made in the trial court and cannot be made for the first time in this court." *Id*. In *Mettetal v Hall*, 288 Mich 200, 207-208; 284 NW 698 (1939), the Michigan Supreme Court similarly held that "[w]here a witness gives his testimony without being sworn, the adverse party by not objecting thereto *waives* any objection to it." (Emphasis added.) In *People v Knox*, 115 Mich App 508, 511; 321 NW2d 713 (1982), this Court, after acknowledging MRE 603 and MCL 600.1432, ruled that, under *Kemmis* and *Mettetal*, the issue of unsworn testimony was not reviewable because "defense counsel did not object to the failure of the trial court to insist upon an oath or affirmation."

The above precedent effectively applies a waiver analysis when a party fails to object to the unsworn testimony and allows the testimony to be fully developed. Federal courts have taken a similar stance. In *United States v Odom*, 736 F2d 104, 114-115 (CA 4, 1984), the Fourth Circuit of the United States Court of Appeals observed:

It is well settled that the swearing of a witness is waived by failure to raise the point during the witness' testimony, thus denying the trial court an opportunity to correct what has been characterized as an "irregularity." The rationale of this principle was declared a century and a half ago in the oft-cited case of *Cady v Norton*, 14 Pick 236, 237 (Mass, 1833). The Court in that case stated two justifications for the rule: First, the defect or failure could have been corrected if a timely objection had been made; second, in the absence of a waiver rule counsel might deliberately avoid objecting to a witness being unsworn in order to have a ground of appeal.

The Fifth Circuit in *United States v Perez*, 651 F2d 268, 273 (CA 5, 1981), stated that "[i]t has long been the general rule that even a failure to swear a witness may be waived[,]" and "[t]his may occur either by knowing silence . . . or by the mere failure of counsel to notice the omission . . . ." And in *Wilcoxon v United States*, 231 F2d 384, 387 (CA 10, 1956), the Tenth Circuit indicated that "the administering of the oath to a witness may be waived" and that "[b]y failing to bring the matter to the attention of the trial court in some manner . . ., [the defendant] effectively waived the right to seek a new trial[.]"

-10-

State courts outside of Michigan have also applied a waiver analysis when there was no objection to unsworn testimony. *State v Paolella*, 211 Conn 672, 687-688; 561 A2d 111 (1989); *Heier v State*, 727 P2d 707, 708 (Wy, 1986) (" 'It is generally held that the failure to require an oath or affirmation before testifying must be raised by objection or it is considered waived.' ") (citation omitted); *State v Navarro*, 132 Ariz 340, 342; 645 P2d 1254 (Ariz App, 1982) ("irregularity in failing to swear a witness is waived where he is permitted to testify without objection"); *Brown v Ristich*, 36 NY2d 183, 189; 366 NYS2d 116; 325 NE2d 533 (1975) ("the failure to object to unsworn testimony serves to waive any argument that the testimony was not properly admitted").

Here, although defendant objected at the trial that the victim's preliminary examination testimony had not been given under oath or by affirmation, there was no objection at the time that the testimony was actually procured at the preliminary examination. Only an objection at the preliminary examination would have been meaningful, allowing the district court to take corrective action and prevent the error. While *Kemmis*, *Mettetal*, and *Knox* dealt with a failure to object at trial, with the complaining parties raising the issue of unsworn testimony for the first time on appeal, which varies from the procedural circumstances here, the waiver analysis is nonetheless applicable. This is so because the overriding principle arising from the caselaw is that one must object at the time the unsworn witness is giving the testimony, not at a later date. Given that preliminary examination testimony always presents the potential of being admitted at a future trial due to witness unavailability caused by injury, illness, death, flight, lack of recall, or other events or circumstances, it is incumbent on counsel to protect the record. Under *Kemmis*, *Mettetal*, and *Knox*, defendant waived the issue concerning the victim's unsworn testimony, and thus reversal is unwarranted.

We acknowledge that the waiver analysis is somewhat inconsistent with more recent Supreme Court precedent regarding, in general, the concepts of forfeiture and waiver. In *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), our Supreme Court explained the difference between waiver and forfeiture, stating:

> Waiver has been defined as the intentional relinquishment or abandonment of a known right. It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an error. [Citations and quotation marks omitted.]

Simply not objecting to the unsworn testimony at the preliminary examination, especially where there is no indication that defendant was cognizant of the oversight and knowingly remained quiet, appears to be more of a case of forfeiture than waiver, which would implicate plain-error analysis. Claims of constitutional or nonconstitutional forfeited error are reviewed for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In *Carines*, the Court set forth the plain-error test:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally

-11-

requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence. [*Id.* at 763 (citations and quotation marks omitted; alteration in original).]

Indeed, in *Putman*, 309 Mich App at 243, this Court addressed an unpreserved claim that the trial court had erred in not properly administering the oath to witnesses, and the panel did not apply a waiver analysis, but instead stated:

Defendant did not object to the form of the oath given to the witnesses at trial. Therefore, the issue is unpreserved. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. [Citations omitted.]

This approach in *Putman* does appear to be inconsistent with *Kemmis*, *Mettetal*, and *Knox*. Regardless, even if we apply the plain-error test, reversal is unwarranted. Assuming the existence of a plain error, defendant has not shown that he was prejudiced as a result of the district court allowing the victim to testify absent oath, affirmation, or a promise (or timely promise) to tell the truth. At the preliminary examination, before any substantive testimony was elicited from the victim, the prosecution carefully questioned the child regarding the difference between truth and lies. And the child responded in a manner showing that she fully understood the distinction. Certainly, even the child, despite her youth, appreciated that the prosecutor's questions were meant to instill an understanding of the necessity to tell the truth. Additionally, defense counsel peppered the child with questions regarding her ability to tell the truth and to distinguish between fact and fabrication. Counsel asked the child whether she had "been telling the truth so far," and she replied, "Yes." The child further implored: "I'm telling the truth;" "I'll tell the truth;" and "I'll still tell the truth." The victim recalled how several people had emphasized to her to simply tell the truth when she testified. Accordingly, although the child did not expressly promise to tell the truth at the preliminary examination or did not do so before testifying on behalf of the prosecution, the record reflects that the child understood the difference between truth and lies, understood the need to tell the truth, and adamantly asserted that she had told the truth, was telling the truth, and would continue to tell the truth. The purpose of an oath or affirmation is "to awaken the witness's conscience and impress the witness's mind with the duty to" testify truthfully, MRE 603, and the child was clearly conscious and had it impressed upon her of the need to testify truthfully. Defendant's argument does not withstand scrutiny under the plain-error test, as we confidently conclude that prejudice has not been shown.

Additionally, even if we treat the claim of error as having been *fully preserved*, defendant's argument, as noted earlier, is entirely couched within the framework of an alleged violation of his right of confrontation. And our Supreme Court has unequivocally held that "[h]armless error analysis applies to claims concerning Confrontation Clause errors." *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (applying harmless-beyond-a-reasonable-doubt standard). At the risk of being redundant, we again conclude that, although the child did

not expressly promise to tell the truth at the preliminary examination or did not do so before testifying on behalf of the prosecution, the record reflects that the child understood the difference between truth and lies, understood the need to tell the truth, and adamantly asserted that she had told the truth, was telling the truth, and would continue to tell the truth. Any error was harmless beyond a reasonable doubt.

In regard to structural error, we note that the Kentucky Supreme Court has held that the failure to administer an oath to a witness is not a structural error. *Peak v Commonwealth*, 197 SW3d 536, 547 (Ky, 2006). Moreover, our Supreme Court in *People v Cain*, 498 Mich 108, 118 n 4; 869 NW2d 829 (2015), recently explained that structural error has only been found in a very limited class of cases – "complete denial of counsel, a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and defective reasonable-doubt instructions." (Citation omitted.) We are unaware of any cases holding that the admission of unsworn testimony constitutes structural error.

Finally, assuming that *unpreserved structural error* actually occurred, our Supreme Court in *Cain*, 498 Mich at 118 n 4, quoting *People v Vaughn*, 491 Mich 642, 666-667; 821 NW2d 288 (2012), observed that even if an unpreserved error is structural, a new trial is only warranted if the plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings (fourth prong of the plain-error test). Given the evidence, the nature of the assumed error, and the victim's testimony regarding telling the truth, we cannot conclude that the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. Reversal is unwarranted.

## III. VAGUENESS AND THE SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the offense of CSAA is unconstitutionally vague as applied to him under the circumstances in this case, undermining both the CSAA conviction and the related computer-crime conviction, and that there was insufficient evidence supporting the CSAA conviction. Defendant also argues that trial counsel was ineffective for failing to raise a vagueness argument below and for withdrawing a motion for a directed verdict challenging the sufficiency of the evidence. We reject each of these arguments.

## A. VAGUENESS AND THE CSAA STATUTE

As indicated earlier in this opinion, the CSAA and computer-crime offenses were prosecuted on the basis of the two videos filmed using defendant's iPhone 4, which were also stored on the iMac and an external hard drive. With respect to the offense of CSAA, MCL 750.145c(2) provides, as pertinent to the prosecution's theory of the case, that "[a] person who . . . knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material . . . is guilty of a felony[.]" " 'Child sexually abusive activity' means a child engaging in a listed sexual act." MCL 750.145c(1)(n). A "listed sexual act" expressly includes, as relevant here, "masturbation." MCL 750.145c(1)(i). "Masturbation" is statutorily defined as follows:

> [T]he real or simulated touching, rubbing, or otherwise stimulating of a
> person's own clothed or unclothed genitals, pubic area, buttocks, or, if the person

-13-

is female, breasts, or if the person is a child, the developing or undeveloped breast area, either by manual manipulation or self-induced or with an artificial instrument, for the purpose of real or simulated overt sexual gratification or arousal of the person. [MCL 750.145c(1)(k).]

" 'Child sexually abusive material' means any depiction, whether made or produced by electronic, mechanical, or other means, including a . . . video . . . which is of a child . . . engaging in a listed sexual act[.]" MCL 750.145c(1)(o). Finally, MCL 752.796(1) provides that "[a] person shall not use a computer program, computer, computer system, or computer network to commit . . . a crime." For purposes of the computer-crime charge under MCL 752.796(1), the predicate or underlying crime relied on by the prosecution was the CSAA offense.

As outlined in his appellate brief, the crux of defendant's vagueness argument is as follows:

The language used to define masturbation does not provide any specific criteria for its application. Rather, in this case the statute was arbitrarily applied to create criminal conduct. That there was no fair notice as to the illegal nature of the charged conduct is highlighted in several regards. Even . . . [the] [d]etective [computer forensic examiner] was clueless as to what, if any behavior exhibited in the digital media was illegal.

"The constitutionality of a statute is a question of law that this Court reviews de novo." *People v Douglas*, 295 Mich App 129, 134; 813 NW2d 337 (2011) (addressing a vagueness challenge). We assume that a statute is constitutional and interpret the statute as constitutional "unless it is clearly unconstitutional." *Id.* at 135. The party claiming a statute is unconstitutional bears the burden of proving its invalidity. *Id.*

In *People v Gratsch*, 299 Mich App 604, 609-610; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013), this Court discussed the nature of a vagueness challenge:

The void-for-vagueness doctrine flows from the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, § 17, which guarantee that the state may not deprive a person of life, liberty, or property, without due process of law. A statute may be challenged as unconstitutionally vague when (1) it is overbroad and impinges on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated. A statute provides fair notice when it gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited. A statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words. But a term that requires persons of ordinary intelligence to speculate about its meaning and differ on its application may not be used. [Citations, quotation marks, and alteration brackets omitted.]

The statutory definition of "masturbation," MCL 750.145c(1)(k), plainly provides specific criteria for its application, was not arbitrarily applied to create criminal conduct, and

-14-

gives fair notice as to the illegal nature of the proscribed conduct in the context of a CSAA prosecution. Defendant's vagueness argument, at its core, is that a person of ordinary intelligence is forced to speculate in ascertaining whether the particular actions and movements of the child as seen in the videos fall within the statutory definition of masturbation, thereby rendering MCL 750.145c unconstitutionally vague as applied to defendant and the specific facts in this case. We disagree.

As relevant to the CSAA charge brought against defendant, and under the definitions recited above, including the definition of "masturbation," a person is subject to criminal penalty for knowingly allowing a child to engage in an act, while videotaping the act, wherein the child rubs or otherwise stimulates the child's own clothed genitals by manual manipulation or with an artificial instrument for the purpose of real or simulated overt sexual gratification or arousal. MCL 750.145c(1)(i), (k), (n), (o), and (2). On the basis of this plain and unambiguous statutory language, a person of ordinary intelligence would reasonably know that filming the child's actions that were specifically depicted in the videos and described earlier is prohibited, absent the need to speculate regarding the meaning of masturbation as defined in the statute. The meaning of the statutory language can easily and fairly be ascertained by reference to dictionaries or the commonly accepted definitions of words. Reversal is unwarranted.

## B. CSAA AND COMPUTER-CRIME CONVICTIONS – SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the evidence was insufficient to support the CSAA and computer-crime convictions, considering the lack of evidence showing that the child was indeed engaged in acts of masturbation as videotaped by defendant. Viewing the direct and circumstantial evidence in a light most favorable to the prosecution, taking into consideration all reasonable inferences arising from the evidence, resolving all conflicts in the evidence in favor of the prosecution, and deferring to the jury's assessment of the weight of the evidence and the credibility of the witnesses, we conclude that a rational juror could find that the prosecution proved beyond a reasonable doubt that defendant knowingly videotaped the child while she was engaged in a "listed sexual act," i.e., masturbation. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002); *Carines*, 460 Mich at 757; *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992); *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The evidence supporting our conclusion included the videos themselves and the acts depicted therein as described earlier, the detective's characterization of the behavior seen in the videos, defendant's suggestive questions to the child during the videotaped conduct, the child's responses to defendant while being filmed, the inappropriate photographs of the child taken by defendant, the child's mother's testimony about a similar masturbatory act, and expert testimony about normal sexual behavior by children. The evidence supported both the CSAA and computer-crime convictions. Reversal is unwarranted.[8]

---

[8] Defendant's associated arguments that counsel was ineffective for not presenting a vagueness argument below and for not following through with a motion for directed verdict on the CSAA and computer-crime charges are rejected, given that counsel is not ineffective for failing to

IV. PROSECUTION'S REBUTTAL WITNESS – HEARSAY AND SCOPE OF TESTIMONY

Defendant next argues that the trial court erred in permitting the prosecution's rebuttal witness – an expert[9] – to testify beyond the scope of defendant's case and to testify to hearsay statements. Defendant also maintains that counsel was ineffective for failing to object to the hearsay testimony. With respect to the hearsay argument, defendant contends that the expert witness improperly alluded to statements made by the victim during her forensic interview, mentioning acts of fellatio and sexual contact unrelated to the charged counts of CSC II for which defendant was convicted. With respect to the scope of rebuttal, defendant argues that at no time did he submit evidence suggesting or contending that the behaviors exhibited by the victim were inconsistent with the behaviors typically seen in sexually abused children, including in regard to the subject of delayed disclosure, and that he did not submit any evidence indicating that the victim was incredible based on particular behaviors. Thus, according to defendant, when the rebuttal expert witness was allowed to testify on matters concerning typical patterns of behavior relative to sexually abused children, it was not properly responsive to the evidence introduced or a theory developed by defendant.

A. HEARSAY

We first tackle the hearsay argument, which defendant bases on two instances during the expert's rebuttal testimony. First, the expert responded as follows when queried by the prosecutor for some examples of source-monitoring questions[10] asked by the interviewer who conducted the victim's forensic examination:

> Well, specifically when she – when [the victim] described that – the penis in the mouth or the – whatever it was in the mouth felt squishy like pizza, that was in response to a source monitoring question.

In the second instance cited by defendant, the prosecutor sought clarity in regard to an "incident" mentioned by the expert that had been communicated by the victim to the forensic interviewer. The prosecutor asked the expert, "And is she talking here about an incident where her dad took his pants off and put his peanut on her thing?" The expert responded, "Yes, she goes on to say that."

Defendant did not object to the testimony; therefore, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. As readily evident, the

---

advance meritless positions or to pursue futile arguments. *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

[9] The witness was qualified by the trial court as an expert in: (1) forensic interviewing; (2) the dynamics and characteristics of child sexual abuse; and (3) suggestibility, source monitoring, and delayed disclosure.

[10] The expert explained that "source monitoring" entails asking children "to derive information from their personal experience," such as asking "them questions about what something felt like, tasted like, [and] smelled like," which makes them "better able to distinguish between something that they heard or saw and something that was their real life experience."

challenged statements did not constitute hearsay, given that they were not "offered into evidence to prove the truth of the matter asserted."  MRE 801(c) (definition of hearsay); *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (2013) ("two notes . . . were admissible because they were not offered into evidence 'to prove the truth of the matter[s] asserted' ") (alteration in original).  The statements were not offered to prove that defendant engaged in oral sex or sexual contact with the child.  Rather, the first statement was offered as part of an explanation and discussion of source-monitoring questions posed to the child.  And the second statement was offered to clarify what "incident" the expert was referencing in regard to communications made by the child to the forensic interviewer, all in the context of broader questioning concerning forensic interviewing procedures.  Accordingly, reversal based on defendant's hearsay argument is unwarranted.[11]

## B.  SCOPE OF REBUTTAL TESTIMONY

Defendant contends that the prosecution's expert's "testimony was the only testimony regarding the concept of delayed disclosure and the characteristics of a child sex abuse complainant[,] [and] [n]o other witness had proffered any such testimony, let alone any contrary testimony."

In *People v Figgures*, 451 Mich 390, 398-399; 547 NW2d 673 (1996), our Supreme Court discussed the nature of rebuttal evidence, observing:

> Admission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed absent a clear abuse of discretion. Because the scope of rebuttal is based on the trial judge's discretionary authority to preclude the trial from turning into a trial of secondary issues, it is the trial court that must, of necessity, evaluate the overall impression that might have been created by the defense proofs. . . .

> . . .

> Rebuttal evidence is admissible to "contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." The question whether rebuttal is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross-examination.

> Contrary to the dissent's insinuation, the test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive

---

[11] Additionally, because counsel is not ineffective for failing to raise a meritless or futile objection, we reject defendant's argument that counsel was ineffective for not making a hearsay objection. *Henry*, 305 Mich App at 141.

to evidence introduced or a theory developed by the defendant. [Citations omitted.]

With respect to the expert being allowed to testify about delayed disclosure, as well as forensic interviewing, suggestibility, and source monitoring, defense counsel expressly indicated that he would "leave it to the [c]ourt's discretion," while objecting only to the expert testifying in regard to the dynamics and characteristics of child sexual abuse.[12] Accordingly, the issue was waived for purposes of appeal. *Carter*, 462 Mich at 215. Regardless, even if the issue was preserved, any error was harmless. MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). The prosecution asked one question of the expert about delayed disclosure and made no attempt through further questioning to connect the issue to the case at bar.

In regard to the dynamics and characteristics of child sexual abuse, the expert's testimony was responsive and was properly admitted. She testified that it was consistent and not unusual for a child victim of sexual abuse to appear unafraid of the abuser, to have an apparent close and loving relationship with the perpetrator, to forget what occurred to them at some point, and to believe that he or she had already told someone about the abuse, although not in formal reporting terms.[13] Defendant had introduced testimony from a niece and friend indicating that defendant and the victim had an appropriate, normal, and loving relationship. Their testimony painted defendant as an involved, devoted, and affectionate father. This relationship supposedly existed during the period of sexual abuse. The testimony was offered by defendant to assail the victim's

---

[12] While delayed disclosure would appear to fit within this category, the prosecutor, trial court, and defense counsel spoke of and addressed delayed disclosure separately. See footnote 9 above.

[13] We note that in *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), the Michigan Supreme Court ruled:

> In these consolidated cases, we are asked to revisit our decision in *People v Beckley*, 434 Mich 691; 456 NW2d 391 (1990), and determine the proper scope of expert testimony in childhood sexual abuse cases. The question that arises in such cases is how a trial court must limit the testimony of experts while crafting a fair and equitable solution to the credibility contests that inevitably arise. As a threshold matter, we reaffirm our holding in *Beckley* that (1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty. However, we clarify our decision in *Beckley* and now hold that (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility.

credibility and to have the jury question how the sexual abuse could have occurred given the ostensible father-daughter bond and the victim's lack of fear of defendant. The expert's testimony was properly offered to rebut any inferences arising from the testimony by defendant's niece and friend.

## V. OPINION TESTIMONY REGARDING COACHING

Defendant next argues that the trial court erred in allowing the officer in charge of the investigation to testify to her opinion that the victim had not been coached. Defendant maintains that permitting the testimony violated the well-settled rule that one witness may not comment on the credibility of another witness while testifying at trial.

On direct examination of the officer, the prosecution did not elicit any opinion about coaching and only did so on redirect examination after defense counsel on cross-examination pursued a line of questioning suggesting that the victim had been coached in light of the number of persons who had spoken to her before the forensic interview. On redirect, the officer explained the methods used and questions asked by forensic interviewers in attempting to determine whether an alleged child CSC victim had been subjected to coaching, noting the signs that suggest a child had been coached. The prosecutor then asked the officer whether there was any indication that the victim here had been coached. Defendant objected to the prosecutor's question, asserting that the officer was not an expert in that area. The trial court then asked the prosecutor to establish a foundation for purposes of allowing a response by the officer, and the prosecutor proceeded to elicit information regarding the officer's training, experience, education, and background relative to forensic interviewing and coaching. The officer then testified, absent further objection by defendant or intervention by the court, that there was no indication that the victim had been coached. It would thus appear that the court accepted the testimony as expert opinion, MRE 702, and not lay opinion testimony, MRE 701.

In *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013), our Supreme Court stated:

> Because it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story, it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial. Such comments have no probative value, because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence. . . . As a result, such statements are considered superfluous and are inadmissible lay witness opinion on the believability of a witness's story because the jury is in just as good a position to evaluate the witness's testimony. [Citations, quotation marks, and alteration brackets omitted.]

In *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014), the Supreme Court held that the principle that it is improper for a lay or expert witness to comment on the credibility of another witness barred the testimony of an expert forensic interviewer who had opined that a child CSC victim had not been coached and was being truthful, as well as precluding the testimony of a CPS worker who had opined that there was no indication of coaching or that the victim was being untruthful.

As defendant did not object to the testimony on the basis of the particular argument now presented on appeal, our review is for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 309, 312; 684 NW2d 669 (2004). We initially note that it is unclear from *Douglas* whether the Court found problematic the testimony regarding coaching or whether the main or sole concern was the testimony about the victim's truthfulness (or perhaps a combination thereof). Defendant makes no claim here that the officer ever opined at trial that the victim was telling the truth. In our view, giving an opinion that there was no indication that a child CSC victim was coached based on forensic-interview training, experience, education, and the totality of the circumstances, MRE 702-703, is not the equivalent of opining that the victim was credible or telling the truth. Indeed, we believe that there is also a distinction between testifying that a child victim had not been coached, like the definitive conclusion made by the forensic interviewer in *Douglas*, 496 Mich at 570, 583, and testifying that *there is no indication* that a child victim was coached, as opined by the officer in this case. Additionally, defendant opened the door to the question whether there was any indication of coaching.

To the extent or assuming that *Douglas* directs a conclusion that the officer's testimony that there was no indication of coaching was inadmissible, we hold that defendant has not established the requisite prejudice under the plain-error rule. *Carines*, 460 Mich at 763-764. The officer's untainted responses to proper questions by the prosecutor leading up to the presumed improper question and response effectively revealed to the jury the officer's view that safeguards had been followed during the forensic interview as necessary to weed out any indications of coaching by others. The opinion itself added very little to the otherwise appropriate line of questioning. Moreover, we cannot conclude that any presumed error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 763. Reversal is unwarranted.

## VI. CROSS-EXAMINATION OF DEFENSE EXPERT

We begin with some background information in order to give context to defendant's argument on appeal. Defendant presented the testimony of a witness who was qualified as an expert in forensic psychology with expertise in forensic interviewing techniques, memory, suggestibility, child and adolescent development, and normative sexual behavior of children. The prosecution, citing the principles in MRE 703, objected to defendant's expert testifying with respect to opinions and views regarding the victim's forensic interview unless the interview itself (on videotape) was admitted into evidence. Defense counsel indicated that he had no plans to ask for the admission of the forensic interview. Defendant's attorney explained to the court that his planned examination of his expert was intended to address whether the victim's accusations had been tainted by others or had been the result of coaching, *as based on evidence regarding events and interactions that transpired before the forensic examination.* Defense counsel agreed that he could not ask questions of the expert regarding materials that were not in evidence. Defense counsel then began backpedaling, arguing that the expert should be permitted to testify in relationship to the forensic interview to the extent that a prosecution witness had testified in regard to the interview. After extensive arguments, the trial court ruled, "The witness may testify and the [c]ourt will rule on what comes in and what doesn't come in afterwards." Defendant asserts on appeal that the trial court's ruling appeared or was understood by trial counsel to be a ruling that the expert could not testify regarding the forensic interview unless the recording of the interview was admitted into evidence. As gleaned from above, this is a gross

mischaracterization or a mistaken interpretation of the court's ruling; no such ruling was made. The expert proceeded to testify in support of a position that the child may have been coached given the numerous interactions with people prior to the forensic interview, but the expert did not explore the forensic interview itself.

Subsequently, on cross-examination of the expert, the prosecutor asked the expert if she had any concerns regarding whether the forensic interview of the victim had been conducted pursuant to established forensic interviewing protocol. Following an objection by defense counsel and a bench conference of unknown character, the trial court, without directly addressing or ruling on the objection, allowed the prosecutor to proceed with her questioning. Thereafter, the prosecutor engaged the expert in questioning concerning any criticisms the expert had about the forensic interview. The expert freely voiced her criticisms of asserted problematic aspects of the forensic interview. At one point, the expert acknowledged that the victim had told the interviewer that it felt squishy like pizza when defendant put his "buto" in her mouth. The cross-examination of the expert also entailed references to the victim's preliminary examination testimony and to the opinion by the officer in charge that there was no indication of coaching. On redirect examination, defendant asked questions of the expert pertaining to the forensic interview.

In his appellate brief, defendant argues that the cross-examination of the expert by the prosecution regarding the forensic interview was improper because it exceeded the scope of direct examination that had been curtailed by the trial court on the prosecutor's own demand that the expert should not be permitted to testify with respect to the forensic interview. Defendant argues that the trial court, in improperly allowing the cross-examination about the forensic interview, effectively permitted the prosecutor to introduce hearsay and to present to the jurors, *for a second time*, parts of the victim's preliminary examination testimony and the officer's opinion on coaching or lack thereof.

The factual predicate of defendant's argument is inaccurate, considering that the trial court did not rule that questions concerning the forensic interview could not be asked on direct examination. Moreover, MRE 611(c) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility," with the court having the *discretion* to "limit cross-examination with respect to matters not testified to on direct examination." Furthermore, the prosecution's questioning gave the expert a forum to voice her criticisms of the forensic interview, which defense counsel further explored on redirect examination. We cannot conclude that defendant was prejudiced; any error was harmless. MCL 769.26; *Lukity*, 460 Mich at 495. The trial's second injection of the opinion regarding whether the victim had been coached, even assuming its inadmissibility, and the repeated parts of the victim's preliminary examination testimony, which was otherwise entirely admissible, plainly did not prejudice defendant. Moreover, like our ruling regarding the prosecution witness's reference to fellatio, which came from the identical passage in the forensic interview, the expert's testimony was not hearsay, given that it was not "offered into evidence to prove the truth of the matter asserted." MRE 801(c); *McDade*, 301 Mich App at 353. It was, as before, offered as a means of assessing the soundness of the forensic interview, not to prove that defendant had oral sex with the victim. Finally, under the circumstances described above, trial counsel was not deficient on the matters argued by defendant, nor has prejudice been established. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

VII. MRE 404(b)

Defendant next argues that the trial court erred under MRE 404(b) in allowing the admission of other acts evidence. This evidence, according to defendant, included nude and semi-nude photographs of the child in various areas of the bathroom and evidence of allegations made by the child during the forensic interview. Defendant states in his appellate brief that these allegations were "that her father had punched her in the stomach while at the zoo, thrown her out of a window 100 times, stuck toothpicks in her butt and her eyes, [took] his clothing off and put his peanut on her private part, licked his own private part and made her put his penis in her mouth."[14] Defendant additionally argues that trial counsel was ineffective to the extent that he did not renew his pretrial objections to exclude the evidence. MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002). The proponent of other-acts evidence must meet three requirements in order to introduce it under MRE 404(b). *People v Sabin*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). The *Sabin* Court elaborated:

> First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind under Rule 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*Id.* (citations and quotation marks omitted; alteration in original).]

With respect to the photographs, in pretrial motions defendant challenged the admission of the photos, and the trial court ruled that their admission would be "taken under advisement" and reviewed pursuant to *People v DerMartzex*, 390 Mich 410; 213 NW2d 97 (1973). At trial, when the prosecution moved to admit the photographs, defense counsel expressly indicated that there was no objection. It would thus appear that defendant waived the issue for purposes of

---

[14] The allegations of fellatio and sexual contact were the same as those addressed earlier in this opinion.

appeal. *Carter*, 462 Mich at 215. However, given the pretrial objections and the fact that defendant bootstraps an ineffective assistance claim relative to the failure to object, we shall continue with our analysis. While the trial court specifically stated that it would be entertaining admission of the photographs under *DerMartzex*, defendant makes no attempt to address *DerMartzex* in his appellate brief; it is not cited anywhere in the brief. Accordingly, defendant's argument can reasonably be viewed as waived, but we shall continue our examination.

The Supreme Court in *DerMartzex*, 390 Mich at 413-415, after acknowledging MCL 768.27, which is essentially the statutory version of MRE 404(b), indicated that where a defendant is charged with unlawful sexual acts, it is proper to admit evidence of uncharged activities between the defendant and the victim when such evidence enhances credibility, shows familiarity, explains and gives context to the relationship, forms a link in the chain of events, allows the jury to appreciate the full range and nature of the interactions between the defendant and the victim, and otherwise provides the jurors with the full or entire story, instead of leaving the jurors to view events in a vacuum. All of these reasons are especially relevant here. The photographs gave context to the videos, allowing for a better understanding of the events captured by the videos, including the acts of masturbation, and showing defendant's intent and motive in filming the victim. The photographs also enhanced the victim's credibility with respect to her CSC II accusations. In sum, the photographs assisted in providing the jury the full story. The photographs were not admitted to demonstrate defendant's criminal propensity, and the probative value of the evidence was not substantially outweighed by the danger of any unfair prejudice, MRE 403.[15] The trial court did not err in admitting the evidence, and trial counsel was not ineffective for failing to raise a futile objection. *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

With respect to the forensic interview references to the child being punched in the stomach while at the zoo, being thrown out of a window 100 times, being stuck with toothpicks in her butt and her eyes, and her claim that defendant licked his own private part, this evidence was elicited by defendant himself and relied on by defendant in arguing that the victim's claims were nonsensical and that she could not be believed. Defendant has waived any appellate claims in regard to this evidence, *Carter*, 462 Mich at 215, and any assumed error in admitting the evidence is entirely harmless, *Carines*, 460 Mich at 763-764. The evidence was actually beneficial to defendant's claim of innocence. Furthermore, for that very reason, counsel's performance was not deficient and no prejudice resulted. *Carbin*, 463 Mich at 599-600.

With respect to the act of fellatio and unclothed sexual contact, we first note that this evidence would generally have been admissible to show defendant's propensity to commit a sexual assault against the victim under MCL 768.27a (addressing admission of other sexual assaults against a minor, supplanting MRE 404[b]). *People v Watkins*, 491 Mich 450, 455-456,

---

[15] To be clear, we are not applying a "res gestae exception" to MRE 404(b), but rather concluding that application of MRE 404(b) did not bar admission of the evidence, given that the photographs were admitted for purposes other than propensity. *People v Jackson*, 498 Mich 246, 281; 869 NW2d 253 (2015) (MRE 404[b] does not create a "res gestae exception" to its coverage).

470; 818 NW2d 296 (2012). *DerMartzex* would also support admission of the evidence. Additionally, given the fleeting and somewhat vague references (victim "described . . . the penis in the mouth or the – whatever it was in the mouth") and the context of the testimony, i.e., examining proper forensic examination techniques, we conclude that defendant has not established, as to this unpreserved claim of error, that he suffered the requisite prejudice, that he is actually innocent, or that any error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Carines*, 460 Mich at 763. Likewise, unable to establish the requisite prejudice, defendant's accompanying claim of ineffective assistance of counsel is rejected. *Carbin*, 463 Mich at 599-600.

## VIII.  SENTENCING AND *ALLEYNE*

Finally, defendant contends that, pursuant to *Alleyne v United States*, 570 US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013), his constitutional rights under the Sixth and Fourteenth Amendments to a jury trial and to have the prosecution prove its case beyond a reasonable doubt were violated, given that the trial court engaged in impermissible judicial fact-finding in regard to various scoring variables. Defendant did not raise this issue below; therefore, "our review is for plain error affecting substantial rights." *Lockridge*, 498 Mich at 392. In *Lockridge*, our Supreme Court recently held:

> Because Michigan's sentencing guidelines scheme allows judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives, it violates the Sixth Amendment to the United States Constitution under *Alleyne*. We therefore reverse the judgment . . . . To remedy the constitutional flaw in the guidelines, we hold that they are advisory only.

> To make a threshold showing of plain error that could require resentencing, a defendant must demonstrate that his or her [offense variable] OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range. If a defendant makes that threshold showing and was not sentenced to an upward departure sentence, he or she is entitled to a remand for [sic] the trial court for that court to determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion.[16] If the trial court determines that it would not have imposed the same sentence but for the constraint, it must resentence the defendant. [*Lockridge*, 498 Mich at 399.]

---

[16] The Court referred to such remands as "*Crosby* remands" after the procedures outlined in *United States v Crosby*, 397 F3d 103 (CA 2, 2005). *Lockridge*, 498 Mich at 395-399. "*Crosby* remands are warranted only in cases involving sentences imposed on or before July 29, 2015 . . . ." *Id.* at 397. Defendant here was sentenced before July 29, 2015.

-24-

In the present case, the minimum sentence range as scored below was 51 to 85 months under the Class B grid, with a total prior record variable (PRV) assessment of 20 points, placing defendant at PRV level C (10 to 24 point range), and a total OV assessment of 60 points, placing him at OV level V (50 to 74 point range), absent any habitual offender enhancement. See MCL 777.63. The trial court engaged in judicial fact-finding in assessing 10 points for OV 4, MCL 777.34(1)(a) (serious psychological injury to the victim) and in assessing 10 points for OV 19, MCL 777.49(c) (interference with the administration of justice). Neither the jury's verdict nor any admissions by defendant supported these scores. Deducting the 20 points from defendant's total OV assessment results in a total OV score of 40 points and "change[s] the applicable guidelines minimum sentence range," *Lockridge*, 498 Mich at 399, from 51 to 85 months to 45 to 75 months (OV level IV – 35 to 49 point range ). MCL 777.63.[17] Accordingly, defendant is entitled to a *Crosby* remand under *Lockridge*, and it is so ordered. Given our ruling, it is unnecessary to consider defendant's accompanying claim of ineffective assistance of counsel for failure to raise the *Alleyne* issue.

Affirmed with respect to defendant's convictions and remanded for compliance with *Lockridge* in regard to defendant's sentences. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Michael F. Gadola

---

[17] The trial court also assessed 15 points for OV 10, MCL 777.40(1)(a) (predatory conduct). We note that OV 10 must be assessed at 10 points when a defendant exploits a victim's youth. MCL 777.40(1)(b). In *People v Needham*, 299 Mich App 251, 252; 829 NW2d 329 (2013), this Court held:

> When a person possesses child sexually abusive material, he or she personally engages in the systematic exploitation of the vulnerable victim depicted in that material. Evidence of possession therefore can support a score of 10 points for OV 10, reflecting that a defendant exploited a victim's vulnerability due to the victim's youth.

An argument can be made that the jury's verdict on the CSAA charge, which necessarily included a finding that defendant engaged in child sexually abusive activity for the purpose of producing child sexually abusive material, supported at least a 10-point score for OV 10 relative to exploitation of youth, and perhaps even 15 points for predatory conduct. Given that the minimum sentence range is already altered by examination of OVs 4 and 19, mandating a *Crosby* remand regardless of consideration of OV 10, we decline to determine whether the jury's verdict encompassed a finding of exploitation or predatory conduct.