# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EMMANUEL JEROME BEVERLY,

        Defendant-Appellant.

UNPUBLISHED
November 1, 2016

No. 326199
Wayne Circuit Court
LC No. 14-007348-FC

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

SERVITTO, J. (*concurring in part and dissenting in part*).

I agree with the majority on its holdings regarding the unavailability of the witness, the admission of hearsay testimony, prosecutorial error, jury instructions, and sentencing. However, because I would find that the admission of the complaining witness "T's" preliminary examination testimony constituted plain error affecting defendant's substantial rights, I would reverse and remand for a new trial. I would also find that defense counsel's failure to object to the admission of this testimony amounted to ineffective assistance of counsel.

## UNAVAILABLE WITNESS

I agree with the majority's conclusion that the trial court did not clearly err by declaring the victim unavailable under MRE 804. However, I write separately because my reasoning differs from that of the majority.

On the day that trial was to begin, but before a jury was selected, the prosecutor indicated that T "testified at the preliminary examination under oath and there is a transcript of that. I tried to interview him this morning. He shut down. He will not talk to me, he will not tell me what the defendant did. . . . So if he refuses to testify, I'm going to ask your Honor to declare him to be unavailable such that we can use the exam transcript." The prosecutor then brought T into the courtroom. T answered only one of many questions posed to him by the trial judge, and answered only a few questions posed by the prosecutor. When asked by the prosecutor if he would talk in court about what defendant did, T answered, "No." Defense counsel declined the opportunity to question T. T refused to answer any more questions asked by the judge or the prosecutor and the record reflects that T sat with his fingers in his mouth at one point. The prosecutor thereafter stated:

-1-

So, judge, before asking your Honor to make a finding that this child is unavailable because he refuses or is unable for whatever reason to answer the questions and then we are asking your Honor to rule that we can use the preliminary examination transcript where . . . the child testified on August 21st of 2014.

The prosecutor asked that the judge rely upon MRE 804(a)(2) and (4) in finding the child unavailable to testify. Defense counsel objected, pointing out that T testified at the preliminary examination and provided "a wealth of information" during an earlier Kids Talk interview. The trial court nonetheless stated:

The court is finding that this young man is unavailable. There was an extensive effort to try to make him answer questions by the court itself, first of all, and he refused to answer any questions at all. He wasn't under any duress or stress or anything else, he just refused to talk. . . . But I think he persisted in refusing to testify both to the prosecution and to the court despite my request that he testify. So I think under 804 he is unavailable.

The second part of this is, it is correct that under 804(b) the former testimony he did give[ ] at the preliminary exam [is a hearsay exception]. . . . And, therefore, the court is going to allow the preliminary examination exam to be used in place of the child.

However, the trial court later indicated that it would bring T in at trial to give him a chance and if he refused to testify at that point, the prosecutor could then move to have T declared unavailable. The trial court noted that T did not look any further traumatized, but instead had just "clammed up."

The next day, after a jury was selected, defense counsel asked the trial judge, outside of the presence of the jury, to not bring T into court, given that the trial court had already ruled that he was unavailable as a witness. The prosecutor indicated that she had thought the trial judge had ultimately decided that they would bring T into the courtroom during the trial to see if he would be willing to talk and, if not, the trial judge would then declare him unavailable. The trial judge stated, "That basically is what I said. . . . I did declare him, under those circumstances, [the day prior], unavailable and – but I thought it would be necessary for him to come today and if he repeated his actions that I was going to declare him unavailable." The trial judge pointed out that T did answer some of the prosecutor's questions the day prior, albeit not about the trial matter. Defense counsel then stated that the prosecutor stated earlier that T was upset and was crying and that if T was not going to be made a witness, the possibility of prejudice in reference to how T acted when he appeared in front of the jury outweighed any probative value because the trial court had already decided that T would not likely be cooperative. The prosecutor responded that "he may talk to me, I don't know." The trial court granted defense counsel's request and found that based upon T's actions the day prior in refusing to speak about anything that had to do with the CSC charge, that he was unavailable for trial purposes under MRE 804(a)(2)(witness persists in refusing to testify concerning the subject matter of the declarant's statement).

It is apparent from the above that defense counsel affirmatively requested that T not be brought into the courtroom for the trial and questioned before the jury. That being the case, the very important concept of waiver—as distinguished from forfeiture—was implemented by defense counsel. Defense counsel had the existing right to have T on the stand at trial and to have him questioned before having him declared unavailable as a witness. Defense counsel knew he had that right, given the trial judge's statements, and voluntarily relinquished that right as a matter of trial strategy because he was concerned about how T would behave if put on the stand to testify in front of the jury. See, *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012)(waiver is the intentional relinquishment of a known right). Defense counsel's decision was akin to an evidentiary decision and, because "counsel has full authority to manage the conduct of the trial and to decide matters of trial strategy" waiver could be effected by the affirmative action of defense counsel. See *People v Carter*, 462 Mich 206, 218-19; 612 NW2d 144 (2000).

## PRELIMINARY EXAMINATION TESTIMONY

I disagree with the majority's conclusion that reversal based upon defendant's argument that the admission of T's preliminary examination testimony did not satisfy the requirements of MRE 804(b)(1) was unwarranted. The majority concludes that because defense counsel did not object to T's unsworn testimony at the preliminary examination, the issue has been waived. This conclusion is based on what I believe to be the majority's incorrect interpretation and application of recent authority concerning the applicable standard to be applied in such circumstances.

The majority relies principally on *People v Sardy*, 313 Mich App 679; NW2d__ (2015). In that case, the unsworn preliminary examination testimony of a seven year old victim of criminal sexual conduct was submitted to the jury during the trial after the trial court found that the victim had become unavailable due to lack of memory. *Id*. at 679-680. Brought under the claim of a violation of his constitutional right to confront witnesses against him, the defendant argued on appeal that the unsworn preliminary examination testimony of the victim should not have been admitted. The *Sardy* Court determined that reversal was unwarranted.

The *Sardy* Court noted that the defendant made no attempt to address the classification and to review the approach to his alleged error; i.e., "whether the error was structural, whether the error was waived and thus not appealable, whether the error was forfeited, whether, if forfeited, the plain-error test precludes or requires reversal, whether the error was preserved, and, if preserved, whether the harmless-error test precludes or requires reversal." *Id*. at 686. Citing cases from 1908, 1939, and 1982, the Court did state, however, that "a structural-error approach relative to the unsworn testimony is not consistent with caselaw" and that such "precedent effectively applies a waiver analysis when a party fails to object to the unsworn testimony and allows the testimony to be fully developed." *Id*. at 687. Relying on these cases, the *Sardy* Court determined that the "defendant waived the issue concerning the victim's unsworn testimony, and thus reversal is unwarranted." *Id*. at 686.

The *Sardy* Court goes on to acknowledge that the waiver analysis is "somewhat inconsistent" with more recent Supreme Court precedent regarding the concepts of waiver and forfeiture, citing the precedentially binding cases of *Carter*, 462 Mich 206)(noting the crucial distinction between waiver and forfeiture), and *People v Putman*, 309 Mich App 240, 243; 870

NW2d 593 (2015)(employing a forfeiture/plain error analysis to an oath given to a trial witness). Id at 688.[1] The *Sardy* Court concludes that even under a plain error analysis, however, reversal is unwarranted due to the absence of prejudice. *Id*. The *Sardy* Court noted that while the victim never declared by oath or affirmation that the victim would testify truthfully at the preliminary examination, "[w]hen the victim first took the stand, the prosecutor asked her a few preliminary questions for the purpose of establishing that the child could distinguish truth from lies. The victim answered appropriately, and the district court responded in the affirmative when the prosecutor asked the court for permission to proceed with the questioning of the child." Id. at 682. Defendant's attorney did not object to the unsworn testimony that followed and, in fact, during cross-examination of the child:

> Defendant's attorney grilled the child with questions regarding her ability to tell the truth and to distinguish between fact and fabrication. Midway through cross-examination, defense counsel asked the victim whether she had "been telling the truth so far," and the victim replied, "Yes." The child also stated: "I'm telling the truth;" "I'll tell the truth;" and "I'll still tell the truth." The victim further testified how several people had told her to simply tell the truth when she testified. *Id.* at 682; 687.

As a result, the *Sardy* Court found that the essential purpose of an oath or affirmation was met and that the defendant could thus not show that he was prejudiced as a result of the district court allowing the victim to testify without the administration of an oath or affirmation. *Id*. at 689-690.

There are two key differences between the present matter and *Sardy* that lead me to believe that case is not determinative to the facts at hand. First and foremost, the defendant in *Sardy* couched his argument concerning the unsworn testimony *solely* within the context of a violation of the Confrontation Clause. *Id*. at 676, n 6. The *Sardy* Court noted that "there may have been a problem with admitting the preliminary examination testimony under MRE 804(b)(1) (hearsay exception-"former testimony" by unavailable declarant) or under a straight application of MRE 603, defendant does not frame the argument in such a manner." *Id*. Defendant, here, *does* frame his argument in such a manner. Where *Sardy* had no cause to concern itself with the *evidentiary* issues concerning the preliminary examination testimony, this Court does. Defendant does raise a Confrontation Clause issue but it is secondary to the issue of whether the preliminary examination testimony should have been admitted under considerations of MRE 603 and MRE 804(b)(1).

Second, while the witness in *Sardy* may have not been administered an oath or affirmation prior to providing preliminary examination testimony, the record is clear that steps were taken to ensure that the witness was able to ascertain the truth from a lie and that the

---

[1] Notably, *Sardy* failed to take note of *People v Vaughn*, 491 Mich at 654 ("[T]he failure to assert a constitutional right ordinarily constitutes a forfeiture of that right.").

witness's conscience was awakened and it was impressed upon the witness the duty to testify truthfully. *Donkers v Kovach*, 277 Mich App 366, 373; 745 NW2d 154 (2007). MRE 603 states that, "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." There are no "particular ceremonies, observances, or formalities" that are required of a testifying witness, "so long as the oath or affirmation 'awaken[s]' the witness's conscience and 'impress[es]' his or her mind with the duty to testify truthfully." *Donkers*, 277 Mich App at 373. The witness, here, was not asked any questions whatsoever concerning his ability to tell the truth and it was in no way impressed upon him that he should be truthful prior to or during his testimony.

Not only is *Sardy* factually distinguishable from the case at hand, the most significant issue I see with declaring that reversal is unwarranted because defense counsel failed to object to T's unsworn testimony at the preliminary examination is that this holding ignores the difference between a waiver and a forfeiture. The *Sardy* panel rightly acknowledges that there is a significant difference between a waiver and a forfeiture. "Waiver" is "the voluntary relinquishment or abandonment of a legal right or advantage." Black's Law Dictionary (7th Ed.). "Forfeiture," on the other hand, is "the loss of a right, privilege, or property because of . . . neglect of duty" (*Id.*). The United States Supreme Court has long recognized the crucial distinction between these two concepts: "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v Olano*, 507 US 725, 733; 113 S Ct 1770, 1777; 123 L Ed 2d 508 (1993). Quite simply, one forfeits a right by a failure to act or assert the right whereas one waives a right by affirmatively acting in a way that acknowledges an intent to give up the right. Our Supreme Court has followed suit in recognizing the distinction and the effect that the categorization of an error has on appellate review.

In *Carter*, 462 Mich at 215, our Supreme Court provided the same definitions of waiver and forfeiture as those in *Olano*, *supra*, and further stated that "[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an 'error.' " (internal citations omitted). See also *Vaughn*, 491 Mich at 663 ("Both this Court and the Supreme Court of the United States have distinguished the failure to assert a right—forfeiture— from the affirmative waiver of a right"). The effect of the distinction is such that when an error is waived, appellate review is generally precluded, whereas when an error is forfeited, the error is reviewable on appeal for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In this case, defense counsel posed no objection to T's unsworn testimony at the preliminary examination. That is, she remained silent and failed to assert a right. This is not a case where counsel affirmatively expressed approval to proceed with the unsworn testimony. The issue simply did not come up. Since counsel did not affirmatively express her approval, I would find that the issue was not waived, but was instead forfeited. I would thus review defendant's forfeited nonconstitutional error (and forfeited constitutional error for that matter) for plain error affecting his substantial rights. *Carines*, 460 Mich at 763. Reversal is warranted on this basis when defendant can show prejudice, i.e., that "the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the

fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation omitted).

The majority concludes that even under a plain error analysis, reversal is not warranted because defendant has shown no prejudice. Again, I respectfully disagree.

I find some guidance in the considerations set forth in *Vaughn*, 491 Mich at 667. In that case, our Supreme Court undertook a plain error analysis with respect to a Sixth Amendment violation of the right to a public trial. The *Vaughn* Court looked to federal decisions in determining whether prejudice had been shown, particularly that of the Second Circuit, and noted:

> The United States Court of Appeals for the Second Circuit has recognized that it does not follow that every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure—would require that a conviction be overturned. While the Second Circuit's analysis does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer prejudice or specific injury, it examines whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment. The goals sought by these protections include (1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury. [quotations omitted]

I find that these goals equally applicable in this case and the relevant focus when determining if prejudice occurred. Here, prejudice did occur.

In her opening statement, the prosecutor told the jurors, "Now, normally in a case like this the little seven-year-old would take the witness stand and testify. But the Judge has made a ruling that [T] is unavailable for purposes of trial. So what you're going to hear instead is a transcript of testimony that was taken in August of 2014 at the Hamtramck District Court where the child testified under oath and was asked questions by the prosecutor and by a defense attorney."

Before having the preliminary examination read to the jury, the prosecutor asked the judge to instruct the jury that T would have been sworn to tell the truth before he testified. The trial court stated:

> Yes, I did say that. I think you all heard me say that he was sworn to tell—well, I don't know that he was sworn, he was qualified—he's seven years old so we don't swear seven-year-olds. He was qualified to tell the truth. He was competent, they found that he was competent at that time to testify.

\*\*\*

-6-

And he knew the difference–competent to testify means you know the difference between lying and telling [] the truth.

Thus, in this case, the jury was placed under the mistaken belief that T had either been placed under oath or had been found qualified to testify prior to giving his preliminary examination testimony. The jury was in fact, *instructed* by the trial judge himself, that " they" (presumably the prosecutor, defense counsel, and the district court) had found T to be competent--which he clarified as knowing the difference between lying and telling the truth—"at that time to testify." Where a very young child was the only one to directly name defendant as the perpetrator but was never questioned concerning whether his testimony at the preliminary examination was true nor was it established that he knew to tell the truth, yet the jury was informed that T was found competent to tell the truth, I believe that this error could have affected the integrity of the proceedings and deprived defendant of a fair trial.

In addition, defendant was charged in this matter with one count of criminal sexual conduct in the first degree (CSC I), it being specifically alleged in the felony information that he "did engage in sexual penetration to-wit; finger in anal opening with a child under 13 years of age; contrary to MCL 750.520b(1)(a)" and one count of criminal sexual conduct in the second degree (CSC II), it being alleged in the felony information that defendant "did engage in sexual contact with a child under 13 years of age; contrary to MCL 750.520c(1)(a)." At the preliminary examination, T testified, consistent with the charges, that defendant put his finger in T's "butt" and touched T's genitals. At trial, T's sister testified that T told her that defendant put his penis in T's "butt." An examining doctor also testified that T told him that defendant put his penis in T's "butt." The prosecutor thereafter moved to amend the information to have the CSC I count read that the sexual penetration was either penis or finger into the anal opening. Neither T's sister, nor the doctor testified that the preliminary examination and defendant did not have a full and fair opportunity to explore this alternate theory at preliminary examination because T did not testify to the same. This ties in to both defendant's Confrontation Clause violation argument and his argument under MRE 804(b)(1), because it could be argued (as defendant does) that he did not have a full and fair opportunity to cross-examine T regarding this second type of penetration that the jury could have found to have served as the basis for his CSC I conviction. See *Sardy*, Slip op at 4. For example, T testified at preliminary examination only that defendant had put his finger in T's anus. However, T's sister and the examining doctor both testified at trial that T told them that defendant had put his penis in his anus; neither said anything about a finger in T's anus. The jury, acting on the false belief that T had been found to be competent to testify truthfully at the preliminary examination, could have found that defendant put only his finger in T's anus, and could have convicted defendant of CSC I based upon T's preliminary examination testimony only. While it is understood that credibility issues are generally left for the jury (*People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998)), in this instance, the jury was unable to see T testify for himself and was further incorrectly told that T was found able to tell the truth from a lie. It is impossible to determine whether the jury would have believed that defendant was the perpetrator of abuse on T absent the preliminary examination testimony of T and/or absent the improper assertion that T was found competent to testify as instructed by the trial judge. I would thus find that reversal is warranted.

-7-

## INEFFECTIVE ASSISTANCE OF COUNSEL

I also disagree with the majority's conclusion that defense counsel was not ineffective to object to the admission of T's unsworn preliminary examination testimony. Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. A judge must first find the facts and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). To obtain a new trial based upon ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Having a witness sworn before giving testimony is a basic rule of evidence. MRE 603. Even if defense counsel had not seen the preliminary examination transcript prior to trial or was not aware of its contents until then, the fact that T had not been administered an oath or affirmation before his testimony, nor had he made any promise to tell the truth or established that he knew to tell the truth, was quickly apparent when the preliminary examination testimony began to be read into the record. An objection at that point would have brought the apparent oversight to the trial court and to the prosecutor's attention and may have precluded its admission, which, in turn, could have affected the entire outcome of the trial.

In short, reversal and a new trial are warranted.


/s/ Deborah A. Servitto