*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 21, 2023

Plaintiff-Appellee,

v

No. 360260
Ingham Circuit Court
LC No. 20-000663-FC

WILLIAM ALBERT HALL,

Defendant-Appellant.

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, William Albert Hall, appeals by right his jury-trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This case arises from Hall's sexual assault of an eight-year-old girl. The child testified that when she lived with her mother, Hall had once babysat her and her younger sister while their mother was out of the house. She recalled that after her sister fell asleep upstairs, she went downstairs to watch television in the living room. Hall entered the room from the kitchen and sat on the couch near her. He gradually moved closer to her, which made her more and more uncomfortable. She could smell alcohol and marijuana on his clothes and breath. He began to touch her over her clothes, moving his hand in a circular motion. Hall then touched her face near her chin. She asked him to stop touching her, but he warned her to "be quiet because someone was going to hear." Hall pulled her legs toward him on the couch, removed her pants and underwear, and tried to penetrate her vagina with his penis. She testified that, at the time, he was laying on top of her and holding her wrists above her head. She said that his penis went past her "vaginal lips" but that he was unsuccessful in penetrating her vagina with his entire penis. The child stated that Hall became frustrated, stopped, put his pants back on, and returned to the kitchen. She stated that he threatened that "karma would come back on" her if she disclosed the assault.

The child did not disclose the assault for approximately four years. At that time, she was living with her father, not her mother. She told him what had occurred. She later disclosed the abuse to her sister and her paternal grandmother. The child's sister was surprised that the assault had not been disclosed earlier, but the grandmother stated that she was not surprised by the late disclosure because she had extensive experience with abused foster children. The grandmother believed the child's allegations and warned the child's father that if he did not contact law enforcement, she would. Thereafter, the assault was reported to the police. The child was forensically interviewed and disclosed that Hall had sexually abused her. Due to the length of time that had passed between the sexual assault and when it was reported, the child did not undergo a sexual-assault examination.

Following trial, the jury found Hall guilty of one count of CSC-I and two counts of CSC-II. He appeals now as of right.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Hall argues that his lawyer provided him with constitutionally deficient assistance for a number of reasons. "When no *Ginther*[1] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

To establish ineffective assistance of his lawyer, a defendant must show: (1) that his lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for the lawyer's error, the result of the proceedings would have been different. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004).

### 1. DECISION TO MAKE SPECIAL ARRANGEMENTS FOR THE CHILD'S TESTIMONY

Hall first argues that his lawyer provided ineffective assistance because he stipulated to close the courtroom when the child testified. We disagree.

A trial court's decision to use special courtroom accommodations is governed by MCL 600.2163a, which provides, in relevant part:

> (18) If upon the motion of a party made before trial the court finds on the record that the special arrangements specified in subsection (19) are necessary to protect the welfare of the witness, the court must order those special arrangements.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

In determining whether it is necessary to protect the welfare of the witness, the court must consider all of the following factors:

(a) The age of the witness.

(b) The nature of the offense or offenses.

(c) The desire of the witness or the witness's family or guardian to have the testimony taken in a room closed to the public.

(d) The physical condition of the witness.

(19) If the court determines on the record that it is necessary to protect the welfare of the witness and grants the motion made under subsection (18), the court must order 1 or more of the following:

(a) That all persons not necessary to the proceeding be excluded during the witness's testimony from the courtroom where the trial is held. The witness's testimony must be broadcast by closed-circuit television to the public in another location out of sight of the witness.

(b) That the courtroom be arranged so that the defendant is seated as far from the witness stand as is reasonable and not directly in front of the witness stand in order to protect the witness from directly viewing the defendant. The defendant's position must be the same for all witnesses and must be located so as to allow the defendant to hear and see all witnesses and be able to communicate with his or her attorney.

(c) That a questioner's stand or podium be used for all questioning of all witnesses by all parties and must be located in front of the witness stand.

In this case, the child qualified as a " 'witness' " under MCL 600.2163a because she was 14 years old at the time of the trial, see MCL 600.2163a(1)(g)(*i*). And, because she alleged that she had been sexually assaulted, MCL 600.2163a was applicable. See MCL 600.2163a(2)(a). The record reflects that she was approximately 12 years old at the time of the trial, the nature of the offense was multiple sexual assaults perpetrated by an adult against a child, and the child's father desired special arrangements for her. No specific information was placed on the record regarding the physical condition of the witness. See MCL 600.2163a(18). The prosecutor's motion requested that the court close the courtroom doors, seat Hall farther away from the child while she testified, and use a podium in front of the witness stand. Rather than oppose the motion, Hall's lawyer stipulated to the arrangements. He noted:

I have done many of these motions with [the prosecutor] and I always consent because I find they don't deal with the substantive matter of the case. They are simply remedial measures when there are underage victims involved and so I don't have any problem other than my only thing is that the intent to use a support person is that I'm able to view and see this support person while he or she or whoever is

assisting the testifying witness. Other than that, the orders that have been submitted are acceptable and I would stipulate to them.

On appeal, Hall argues that the closure of the courtroom violated state law because the court did not consider the four factors in MCL 600.2163a(18). Hall also contends that the closure violated his constitutional rights to a public trial. See US Const, AM VI; Const 1963, art 1, § 20. He asserts that there was no strategic reason for his lawyer to not object to the closure of the courtroom. However, Hall's lawyer articulated his strategic reason: he did not believe that the special arrangements involved a substantive matter of the case. A defense lawyer has wide discretion regarding matters of trial strategy. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). We will not "second-guess counsel on matters of trial strategy." *People v Trayer (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). Declining to raise objections to procedures can be sound trial strategy. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). On this record, Hall has not shown that his lawyer's decision was not part of a sound strategy.

Relatedly, Hall asserts on appeal that the child was improperly allowed to testify in "secret" rather than at a public trial. Yet, the record reflects that the proceedings were broadcast via a closed-circuit television to the public in another location in the courthouse. Thus, her testimony was not "secret" and the mere fact that the courtroom was closed did not amount to a deprivation of Hall's right to a public trial. Thus, any objection on the basis that Hall was being deprived of his constitutional right to a public trial would have been futile. Failure to raise a meritless or futile objection does not constitute ineffective assistance. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Moreover, even if Hall's lawyer's performance was deficient, and even if Hall was deprived of his right to a public trial notwithstanding that the entire trial was available for the public to observe, Hall has not established that he was prejudiced. He argues that he can show prejudice because the particular public-trial violation was so serious as to render his trial fundamentally unfair. But the record reflects that the fairness, integrity, and reputation of the proceedings were preserved. See *People v Davis*, 509 Mich 52, 67-68; 983 NW2d 325 (2022) (stating that "a forfeited structural [constitutional] error creates a formal presumption that [the prejudice] prong of the plain-error standard has been satisfied," which shifts "the burden to the prosecution to [affirmatively] demonstrate that the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceeding"). The record reflects that Hall was able to adequately see and hear the child when she testified in the new seating arrangement, that the podium was properly situated in front of the witness stand, and that Hall's trial was broadcast to the public in another room during the child's testimony as required. See MCL 600.2163a(19).

## 2. DEFENSE LAWYER'S "VOUCHING" FOR THE CHILD

Hall next argues that his lawyer rendered ineffective assistance because he improperly vouched for the child. He directs this Court to a comment by his lawyer following cross-examination where the lawyer stated that the child had been a "good witness." He further notes that his lawyer repeatedly referred to the child using terms such as "brave," "stoic," "tough," and "a survivor."

Based on our review of the record, however, it is plain that the defense lawyer's comments were part of his trial strategy. The defense theory of the case was that the child fabricated the allegations to gain attention from or please her controlling father. Hall's lawyer reiterated multiple times that he had no intention of attacking the child's character because he believed that "she [was] the product of horrible," "terrible," and "unimaginable abuse . . . at the hands of . . . her parents." Hall's lawyer used this as a backdrop to provide the jury with the child's motivation to lie. Specifically, he intentionally emphasized the child's character to convince the jury that the child was a "survivor" who fabricated the abuse allegations "to please her father" because the child would do "whatever she need[ed] to do" "to survive because the damn adults aren't going to take care of her." Furthermore, although the defense lawyer also stated that he did not "fault" the prosecution for the lack of physical evidence, he clearly did so to focus the jury's attention on the child's credibility. As described above, the defense lawyer's portrayal of the child was that of a survivor who would do anything—even fabricate sexual-abuse allegations against someone her father disliked—in order to please her father. The defense lawyer's decision to highlight specific evidence during closing argument is a matter of trial strategy, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and we do not second-guess a defendant's lawyer on such matters, *Traver*, 328 Mich App at 422.

## 3. FAILURE TO OBJECT TO VOUCHING TESTIMONY

Hall next asserts that his lawyer provided ineffective assistance by failing to object to vouching-testimony from the child's grandmother and from a police detective. "[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). Witness credibility is "to be determined by the jury," not other witnesses. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Thus, a witness may not testify that a minor victim of sexual abuse "was being truthful" when reporting the sexual abuse. *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014).

Here, the child's grandmother improperly vouched for the child's credibility. During cross-examination, the following exchange occurred between the defense lawyer and the grandmother:

> *Q*. Were you surprised that she hadn't said anything for such a long time?
>
> *A*. No, I wasn't surprised. I was a foster parent for many years and—
>
> *Q*. I'm sorry. I—
>
> *A*. I was a foster parent for many years with kids who had been abused. I know that kids feel intimidated in their environments to disclose those kinds of incidents with their parents or care person.
>
> *Q*. Okay.
>
> *A*. I wasn't surprised at all.
>
> *Q*. Now—

-5-

*A*. I had several teenage girls.

Although the child's grandmother never specifically testified about the child's truthfulness or credibility, her comments nevertheless amounted to improper vouching. She opined that late disclosures were common in abused children and, by implication, she also opined that her granddaughter's late disclosure was not surprising because, like other abused children, she would have felt too intimidated to disclose it sooner. Moreover, during her testimony, the grandmother stated that she *believed* the child was telling the truth, which was why she immediately told the child's father about the assault and warned him to report it to the police before she did. Taken together, the grandmother's comments told the jury that she was a person who was experienced with abused-teenage girls, that they would delay disclosures, and that she believed her granddaughter was truthful in reporting the assault. This amounted to improper vouching.

Hall's lawyer, however, did not render constitutionally ineffective assistance by opening the door to the grandmother's improper vouching. Rather, it was the result of a strategic decision gone awry. Earlier in the trial, Hall's lawyer had successfully elicited testimony from the child's sister that she was surprised that the disclosure had taken four years for the child to make. Seeking to elicit similar testimony from the child's grandmother was not part of an unreasonable strategy. And, although the lawyer could have moved to strike the testimony after it had been elicited, doing so would have drawn attention to it. The failure to object to improper testimony can be a reasonable trial strategy. See *Unger*, 278 Mich App at 243 (indicating that defense lawyers can reasonably decline to object to evidence as a matter of trial strategy, such as wanting not to draw attention to an improper comment).

With regard to the detective's testimony, Hall challenges the fact that the detective described the forensic interview as a "nonbiased" and "truth-seeking" process. Testifying about the purpose and procedure of the forensic interviewing protocol, however, does not constitute improper vouching testimony. Generally, testimony regarding forensic interviewing protocol does not constitute improper vouching testimony. See *People v Sardy*, 313 Mich App 679, 723; 884 NW2d 808 (2015), vacated in part on other grounds 500 Mich 887 (2016). Further, the detective's testimony that the child's disclosure during the forensic interview was consistent with what she disclosed to all of her family members and what she testified about at trial was permissible because the detective's statements did not indicate his personal opinion regarding the child's veracity or vouch for her credibility. Rather, the detective's testimony merely indicated that the child's allegation remained consistent throughout the entire case. Because the testimony was not improper, Hall's lawyer was not ineffective for failing to object to it. See *Ericksen*, 288 Mich App at 201.

## 4. PROSECUTORIAL MISCONDUCT

Hall next asserts that his lawyer was ineffective because he did not object to prosecutorial misconduct. Specifically, he contends that during closing argument, the prosecutor improperly shifted the burden of proof. Prosecutors are generally "accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). However, the prosecution "may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Savage*, 327 Mich App

604, 616; 935 NW2d 69 (2019) (quotation marks and citation omitted). The prosecutor's comments, which were made during rebuttal, "must be considered in light of defense counsel's comments," and "an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Unger*, 278 Mich App at 238 (quotation marks, citations, and alteration omitted).

During closing argument, Hall's lawyer emphasized the prosecution's lack of extrinsic evidence and, in particular, expert witnesses, stating, "We don't have any psych report. We don't have any specialist that comes in and says, 'Well, this late reporting is a common phenomenon.' Sometimes we get that in cases. We don't have that here." In response, the prosecution argued:

> Every time a child is sexually assaulted, does it have to utterly ruin their lives? There is no evidence to suggest this in this record. Counsel wants you to believe that. He wants you to believe that the reason why you can think this is made up is because otherwise she would have gone to a counselor; she would have had problems in school. That's not in evidence.
>
> You also don't have an expert from the [d]efense that says that that has to be true, right? So he criticized me for not bringing in an expert. They put on a case. They could have brought in an expert that said, "Well, all kids will have problems in school and have to go to counselors . . . ."

When reviewing the prosecution's remarks in context and in light of defense lawyer's statements, it is clear that the prosecution's remarks were in direct response to defense lawyer's criticisms that the prosecution had nothing more than the child's testimony to support its case and no expert to explain the child's seemingly "emotionless" response to the assault and failure to report it immediately after it had occurred.

Even if the defense lawyer was ineffective for failing to object to the prosecutor's comments during rebuttal, Hall has not shown that he was prejudiced by any such error. The prosecutor's comments were brief and responsive to the defense argument. Moreover, the jury was properly instructed that the prosecution had the burden to prove its case and that the defense did not have to prove anything. Jurors are presumed to follow their instructions. *Id*. at 236. Hall has not overcome the presumption that the jurors followed their instructions, nor has he established that the outcome of the proceedings would have been different but for his lawyer's failure to object to the rebuttal comments.

## III. ASSESSMENT OF COURT COSTS

Hall next argues that the trial court's imposition of court costs under MCL 769.1k(1)(b)(*iii*) amounted to an unconstitutional tax. Specifically, Hall asserts that the statute is unconstitutional because it violates his due-process right to be heard by a neutral arbiter, separation-of-powers principles, and Michigan's Headlee Amendment. Because Hall's arguments have already been squarely addressed and rejected by this Court, they do not warrant appellate relief. See *People v Johnson*, 336 Mich App 688, 704-705; 971 NW2d 692 (2021) (holding that MCL 769.1k(b)(*iii*) does not deny criminal defendants their due-process rights to be tried before an impartial decisionmaker and that it does not violate separation-of-powers principles); *People v Cameron*,

319 Mich App 215, 218, 229-236; 900 NW2d 658 (2017) (rejecting the defendant's Headlee-Amendment challenge to MCL 769.1k(b)(*iii*) and holding that the trial court's assessment of court costs under MCL 769.1k(1)(b)(*iii*) against a convicted defendant constitutes a constitutional tax rather than a fee because it serves a revenue-raising purpose).

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Michael J. Kelly