*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT MICHAEL KUECKEN,

        Defendant-Appellant.

UNPUBLISHED
November 12, 2024
2:27 PM

No. 364056
Oakland Circuit Court
LC No. 2021-277789-FC

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), (2)(b) (victim under the age of 13 years and defendant over the age of 17 years), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), (2)(b) (victim under the age of 13 years and defendant over the age of 17 years). He was sentenced to 25 to 40 years' imprisonment for CSC-I and 9 to 15 years' imprisonment for CSC-II. Defendant appeals as of right. We affirm.

When the complainant, EA, was about seven years old in approximately April 2011, defendant, who was her mother's boyfriend, moved in with EA, her mother, and her two brothers. In August 2011, defendant and EA's mother married. While defendant acted as a father figure to her, EA also described defendant making her feeling uncomfortable a few years after he moved in. It initially involved defendant touching EA's buttocks when her mother was not present. He later began touching EA's chest. He gave her back rubs at night, sometimes touching her buttocks underneath her clothing. It further progressed when defendant began getting up earlier, before EA's mother, for a new job. On one occasion he entered EA's bedroom and digitally penetrated her. On another occasion, defendant entered her bedroom, pulled down his pants, placed his penis in her hand, and had her cup her hand around it.

The sexual acts continued while EA was in the seventh grade. At that time, she mentioned to some friends that defendant made her feel uncomfortable. A school counselor was advised of what EA said and, while EA was asked what occurred, she did not reveal that defendant was sexually assaulting her.

-1-

After defendant and EA's mother divorced in April 2020, EA disclosed to her mother, in December 2020, that defendant had sexually assaulted her years before. As a result, EA and her mother made a report to the police. Count I charged defendant with CSC-I involving digital penetration of EA's vagina. Count II was for CSC-II involving the incident where defendant had EA hold his penis. Defendant was interviewed by the police and a video recording of his interview was played at trial.

## I. DEFENDANT'S APPEARANCE ON VIDEO RECORDING

Defendant agreed to be interviewed by the police. At the time, he was held in the county jail. He appeared in a video recording of his interview in clothing provided by the jail. His face was covered by a face mask for the majority of the interview because of the COVID-19 pandemic.

Defendant's convictions resulted from his second trial after a mistrial was declared in his first trial. In preparation for his first trial, defendant objected to the original version of the recording made of his police interview because the jury could see that he wore jail-provided clothing and a jail identification bracelet on his wrist. The prosecutor produced a second version of the recording to crop out most of defendant's shirt to show him only from the neck up. At the first trial, defendant's attorney agreed that the changes made to the recording prevented the jury from observing any indications that defendant was in jail-provided clothing, even though a portion of the lettering on the back of the shirt was still visible.

At the time of defendant's second trial, his counsel confirmed that he viewed the recording of defendant's interview and he had no objection before it was shown to the jury. Defendant therefore failed to object to the admission of the recording.

Defendant moved for a new trial, arguing that his right to due process, US Const, Am XIV; Const 1963, art 1, § 17, was violated because the jury could see he was in custody because he had on jail-issued clothing. He also argued that error occurred because he wore a face mask for the majority of the interview, preventing the jury from seeing his face to evaluate his credibility. Because he failed to object to the admission of this evidence at the time of this trial on the same grounds raised on appeal, defendant did not preserve this issue. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019); MRE 103(a)(1). Where an issue, either constitutional or nonconstitutional, was not properly preserved in the trial court, an appellate court will only reverse where the defendant shows that a plain error (either clear or obvious) affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The defendant has the burden of demonstrating that he was prejudiced by the error, i.e., that the outcome of the proceedings was affected. *Id.* The reviewing court, in its discretion, should not reverse unless it concludes that the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* at 763-764.

Whether the defendant has been denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews any factual findings for clear error and reviews de novo questions of constitutional law. *Id.* Because the trial court did not hold an evidentiary hearing on this issue before ruling on defendant's motion for a new trial, this Court's review of the facts is limited to mistakes apparent on the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003).

In *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022), this Court addressed whether the defendant's right to due process, US Const, Am XIV; Const 1963, art 1, § 17, was violated because a recording made of a witness's preliminary examination testimony was admitted and the defendant could be seen on that recording in his jail clothing. This Court rejected the argument that a defendant appearing before the jury at trial in jail clothing, which is impermissible, is comparable to a jury viewing a video where the defendant briefly appears in jail garb, but he wore civilian clothing during his trial. *Id*. at 402-403. For this reason, the Court concluded that there was no due-process violation. *Id*. at 403.

After viewing the entire recording admitted in this case, at most there was a brief portion where writing on the back of the shirt might have been visible, as the attorneys acknowledged during the first trial. For most of the recording, defendant is shown primarily from the base of his neck up so any identifying information on his shirt is not visible. The trial court found, when ruling on defendant's motion for a new trial, that the writing was not visible enough for the jury to conclude that it identified defendant as a jail inmate. If the jury saw a portion of the shirt defendant wore and believed that it contained writing identifying defendant as a jail inmate, under *Horton*, *id*. at 402-403, there is no basis for granting defendant relief. The record does not show that plain error occurred when there is no reason to believe that the jury would have known that defendant was wearing a jail uniform at the time of his interview. Defendant has not established that plain error occurred. *Carines*, 460 Mich at 763.

Alternatively, defendant argues that his counsel was ineffective for not objecting to the recording shown to the jury. To demonstrate ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which involves " 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant must also demonstrate that he was prejudiced by his counsel's error. *Leffew*, 508 Mich at 637. To establish prejudice, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted). "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). The failure to advance a meritless argument or raise a futile objection does not amount to ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defense counsel likely did not object or raise this issue because he also agreed with defendant's first attorney that the jury would not be able to view the writing on the back of the shirt that briefly appeared on the recording. For this reason, defendant has not shown that his counsel was ineffective for not objecting. An objection would have been futile on these facts. *Id*. Even if defense counsel had objected, it is apparent that the result would not have been affected when the trial court found nothing wrong with the recording as admitted. The court would not have ruled that the recording was inadmissible if defense counsel had objected. Accordingly, defendant is not entitled to relief for ineffective assistance of counsel.

Defendant also argues that his attorney should have objected because defendant wore a face mask for the majority of the interview. However, he has not offered any authority to support this part of his argument. Because it was defendant wearing the mask, there is no violation of his

right to confront the witnesses against him, US Const, Am VI; Const 1963, art 1, § 20.  See *People v Brown*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 359376); slip op at 2-4, lv pending.  Defendant has not explained why the use of a face mask during his interview, while the pandemic was still a prevalent problem, violated his right to due process.  It is not up to this Court to search for authority to support or reject an appellant's argument.  *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013).  In light of defendant's failure to support his argument that it was error for the jury to observe him in a face mask, he cannot prove that his trial counsel was ineffective for not objecting.  Defendant has not established that there were grounds for counsel to object or that the objection would have been successful.

Therefore, defendant has not shown that plain error occurred because of how he appeared on the video recording of his police interview, and he has failed to establish that his trial counsel was ineffective for not raising proper objections to the recording.

## II.  TESTIMONY REGARDING FORENSIC INTERVIEW PROTOCOLS

In his motion for a new trial, defendant also argued that it was error for the jury to hear testimony from Emily Sznitka, a forensic interviewer at Care House, who interviewed EA.  Sznitka explained to the jury what is involved in a forensic interview of children who report being sexual abuse victims.  Defendant did not object to this testimony.  Accordingly, defendant is entitled to relief only if plain error occurred that affected his substantial rights.  *Carines*, 460 Mich at 763-764.

Defendant moved for a new trial and argued that Sznitka's testimony was irrelevant because it involved vouching for Ella's credibility.  Even if plain error did not result from the admission of this testimony, defendant argued that his counsel was ineffective for not objecting to it.  Defendant acknowledged that caselaw supported admitting testimony about forensic interviews, but he relied on a concurring opinion in an unpublished decision that such evidence should not be admissible when it is not relevant and should be treated similar to testimony regarding polygraph examinations.

Defendant argues that Sznitka's testimony was irrelevant because it involved vouching for EA's testimony.  In *Thorpe*, 504 Mich at 235, the Supreme Court addressed the use of expert testimony in a case involving sexual abuse of children.  In that case, the Court held that expert witnesses may not testify that children overwhelmingly do not lie when reporting sexual abuse because that type of testimony involves vouching for the credibility of the complaint.  *Id*.  In the companion case, *People v Harbison*, *id*., the Court held that examining physicians cannot testify that a complainant was sexually assaulted or has been diagnosed with sexual assault without physical evidence to corroborate the complainant's account of sexual assault because such testimony also vouches for the credibility of the complainant and interferes with the jury's role.  Given the foregoing, it is clear that an expert witness offering testimony in a sexual assault case is generally barred from commenting on whether the complainant was actually a victim of abuse, whether the complainant is being truthful, or whether the defendant is guilty.  See also *People v Peterson*, 450 Mich 349, 373-376; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995); *People v Smith*, 425 Mich 98, 112-113; 387 NW2d 814 (1986).

Defendant relies on this Court's decision in *People v Dunifin*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2023 (Docket No. 358070), which was also cited in his argument to the trial court in his motion for a new trial. An unpublished opinion is not precedentially binding. MCR 7.215(C)(1). In *Dunifin*, unpub op at 5, the defendant argued that the jury should not have heard from two expert witnesses because the testimony involved vouching for the complainant's credibility. One of those expert witnesses addressed forensic interview protocols and the majority of this Court concluded that no plain error resulted from the admission of that testimony:

> Defendant argues that Brooke Rospierski vouched for MD when she explained that part of the forensic interview protocol was to guard against suggestibility and coaching, but defendant has not pointed to any specific testimony to support that contention. Rospierski explained the protocol that forensic interviewers employ to create a neutral environment for children who have reported sexual abuse. She explained that forensic interviewers discuss the difference between truths and lies with child interview subjects to establish competency. As applied to MD, Rospierski testified that she established competency with MD, who disclosed during the forensic interview that he was sexually abused. The record does not support the assertion that Rospierski impermissibly bolstered MD's credibility. Unlike the expert witness in *Thorpe*, 504 Mich at 259, Rospierski did not testify that sexual abuse occurred or that MD was truthful. She just explained the protocol of the forensic interview that she conducted with MD. Rospierski provided testimony that permitted the jury to contextualize MD's failure to disclose abuse immediately. Under Michigan law, the prosecution may present evidence to generally explain "typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior . . . ." *Peterson*, 450 Mich at 352. Rospierski's testimony was properly admitted to explain the procedure for interviewing children in sexual-assault cases. [*Dunifin*, unpub op at 5-6.]

Defendant relies on Judge Shapiro's separate decision in *Dunifin*, unpub op at 1-3 (SHAPIRO, J., concurring), where he agreed that the defendant's convictions should be affirmed, but explained why he believed that testimony involving forensic interview protocols should not be admissible:

> I agree that it was proper for Rospierski to testify as to issues of delayed disclosure and general symptoms of sexual abuse. However, the testimony concerning the interview itself was, in my view, improper vouching. It is well-established that in credibility contests the court must take care not to admit expert testimony that has the effect of vouching for the complainant's credibility. See *People v Thorpe*, 504 Mich 230, 265-266; 934 NW2d 693 (2019).
>
> The question in this case is whether defendant sexually assaulted his children. The mere fact that forensic interviews were conducted and how they were conducted is not probative as to whether the assaults occurred. Indeed, such examinations are a routine part of such investigations, whether the suspect is guilty or innocent. The fact that a forensic interview was conducted neither supports nor undermines the claim of abuse and so begs the question what relevancy and

probative value the testimony about the interview provides. The answer, in my view, is that such testimony implicitly informs the jury that the child made or reiterated the allegations of abuse during a specialized truth-finding interview, and that the examiner found the child credible. It does not take any special insight for the jurors to realize that the fact defendant was charged with crimes after the interview means that the interview confirmed the allegations and that the examiner found the child credible, i.e., the essence of vouching.

A useful comparison can be made to how we limit testimony concerning polygraph examinations. The outcome of polygraphs is inadmissible, as it vouches for the truth or falsity of statements based on a procedure that is supposed to have special truth-finding capabilities. But it is not merely the outcome of a polygraph that is inadmissible. We also exclude any evidence that a polygraph was administered because of the obvious implication that, if the polygraph had found the defendant truthful or the complainant untruthful, it is highly likely that the defendant would not have been charged and would not be on trial. Thus, the jury will almost certainly conclude that the polygraph found the defendant's claim of innocence to be false. As noted in *People v Frechette*, 380 Mich 64, 72; 155 NW2d 830 (1968):

> The jury having been told by the expert witness about the accuracy of the operation of the polygraph and been informed that defendant had taken a test, and having been told that the expert did have an opinion as to whether defendant was lying, and then been refused the information as to the results of his test, the jury may have been improperly influenced. [*Id*.]

As succinctly stated in *People v Rodgers*, 66 Mich App 658, 660; 239 NW2d 701 (1976), "[t]he Supreme Court of this state has consistently held that neither the fact of the taking of a lie-detector test nor the results of such a test are admissible in evidence," citing *Frechette*, as well as *People v Davis*, 343 Mich 348; 72 NW2d 269 (1955), and *People v Becker*, 300 Mich 562; 2 NW2d 503 (1942).

I would apply the same analysis to forensic interviews. That is, the outcome of such an interview is plainly revealed simply by the fact that the defendant is on trial, and, given that the evidence comes with the imprimatur of scientific validity, its prejudicial effect is maximized. Thus, in order to ensure that a jury does not defer to the conclusion of some special out-of-court truth-finding procedure, the jury should not be informed that the process occurred. Allowing a forensic interviewer to recount her specialized training and technique and her implicit conclusion that the child's accusations are true is the essence of vouching and is no different than informing a jury that the defendant or complainant were administered polygraphs. In either case, the existence of criminal charges makes clear what the conclusion of the procedure must have been. Accordingly, I would conclude that the fact a forensic interview was conducted should not be admissible.

Having said that, I do not believe that reversal is merited in this case. First, there was no objection. Second, the evidence of guilt was very strong with testimony from all three children as well as from two other individuals who were also sexually assaulted by defendant during their childhood. Third, the defense offered no witnesses. Finally, the prosecution's argument contained little reference to the forensic interview or the testimony of Rospierski. [Footnotes omitted.]

We note that the majority in *Dunifin* concluded that plain error did not result from the jury's consideration of testimony involving forensic interview protocols. *Dunifin*, unpub op at 5-6. Judge Shapiro's concurring opinion does not represent a widely accepted view. See *People v Sardy*, 313 Mich App 679, 723; 884 NW2d 808 (2015), vacated in part on other grounds 500 Mich 887 (2016).

Furthermore, on the facts of this case, just like in *Dunifin*, there was no objection to Sznitka's testimony, she limited her comments to forensic interviewing procedures in general, and there was no testimony offered on what occurred in EA's interview. There was nothing that the jury could interpret as a comment on EA's credibility. We cannot conclude that the jury believed that Sznitka was vouching for EA's credibility. At most, the jury was informed that forensic interviews are used to support the criminal justice system. However, there was nothing that suggested to the jury that because charges were brought in this case, Sznitka concluded that EA was credible.

Next, defendant argues that his trial counsel was ineffective for not objecting to Sznitka's testimony about forensic interview protocols. To demonstrate ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which involves "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Leffew*, 508 Mich at 637 (quotation marks and citation omitted). Defendant must also demonstrate that he was prejudiced by counsel's error. *Id*. To establish prejudice, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted). "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). The failure to advance a meritless argument or raise a futile objection does not amount to ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

The admission of Sznitka's testimony does not support defendant's argument that his trial counsel was ineffective. As explained above, given the majority's opinion in *Dunifin*, unpub op at 5-6, defense counsel could have justifiably believed that Sznitka's testimony was not objectionable after this Court approved of the admission of similar testimony. Therefore, counsel may have believed that he did not have grounds to object. The trial court, while not explicitly addressing the admissibility of this evidence, seemed to believe that any objection would have been futile. It therefore appears unlikely that an objection would have made a difference. See *Ericksen*, 288 Mich App at 201. For this reason, defendant cannot prove ineffective assistance of counsel.

Defendant has not shown that Sznitka's testimony was inadmissible because it involved vouching for EA's credibility. Defendant has also not established ineffective assistance of counsel for failure to object to Sznitka's testimony.

## III. OTHER-ACTS EVIDENCE

Defendant next argues that it was error for the jury to hear testimony from EA about other types of sexually-based conduct, offered under MCL 768.27a. This statute provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). After defendant moved to preclude this evidence, the trial court ruled it was admissible under MCL 768.27a and declined to exclude it under MRE 403. The jury therefore heard that defendant groped EA's buttocks and chest, gave her back rubs, which included touching her buttocks underneath her clothing, and took photographs of EA as she showered.

Defendant preserved his argument that this evidence should not have been admitted under MRE 403 by raising it before the trial court. *Thorpe*, 504 Mich at 252; MRE 103(a)(1). We review the trial court's decision to admit the evidence for an abuse of discretion. *People v Hoskins*, 342 Mich App 194, 200; 993 NW2d 48 (2022). A court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*. He now also argues on appeal that MCL 768.27a is unconstitutional. Because that argument was not raised before the trial court, *Thorpe*, 504 Mich at 252, we review it for plain error that affected defendant's substantial rights, *Carines*, 460 Mich at 763.

Defendant argues that the trial court should have excluded this evidence under MRE 403. Evidence offered under MCL 768.27a may still be excluded under MRE 403 if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[1] *Hoskins*, 342 Mich App at 202 (quotation marks omitted).

To determine if the evidence should have been excluded under MRE 403, the trial court was required to perform a balancing test and consider the following factors, among others:

> the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Daniels*, 311 Mich App 257, 273; 874 NW2d 732 (2015) (quotation marks and citation omitted).]

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). The changes recently made to MRE 403 are stylistic only.

"Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Henry*, 315 Mich App 130, 144; 889 NW2d 1 (2016) (quotation marks and citation omitted).

In *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012), the Court discussed additional factors that can be considered when weighing whether evidence offered under MCL 768.27a, involving prior acts of sexual misconduct with a minor, should be excluded by MRE 403:

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [Footnote omitted.]

In the case at bar, the trial court ruled that the evidence was admissible after the court considered whether it should be excluded under MRE 403. While the trial court largely adopted the prosecutor's argument in her brief filed in opposition to defendant's motion, the court first noted that there was commonality between the charges and the proposed evidence. This appears to support the first factor from *Watkins*, involving the dissimilarity between the charged offense and the proposed evidence. The trial court here agreed with the prosecutor that the evidence was probative because it demonstrated how defendant treated EA over time, which included progressively increasing the seriousness of his assaultive conduct.

The second factor, temporal proximity, was shown because the prosecutor limited the testimony to acts that occurred during about a two-year period—when EA was in the fifth grade until she finished the seventh grade. It was during this general time frame that EA began feeling uncomfortable around defendant and his conduct toward her increased in severity to culminate in the charged offenses.

The next two factors do not support excluding the other-acts evidence. EA generally described defendant engaging in a regular pattern of conduct over this period of time in which he displayed sexual interest in her. The other acts were not infrequent, nor were there any intervening acts that proved that admitting the other-acts evidence would be unfairly prejudicial to defendant.

As for the fifth factor, the lack of reliability of the other-acts evidence, this factor does not favor excluding the evidence when there was no basis for the trial court to exclude this evidence because EA's accounts were not reliable.

As for the sixth factor, that factor also did not support finding that this evidence was unfairly prejudicial. This case was primarily decided on the basis of EA's credibility. The prosecutor offered the other-acts evidence to explain the history of EA and defendant's relationship

and how the charged offenses did not suddenly occur in isolation. The other-acts evidence explained how defendant progressively groomed EA to engage in more serious sexual conduct and caused her to become accepting of his actions. The other-acts evidence was probative of EA's credibility.

Overall, defendant has not shown that, applying the *Watkins* factors, the trial court should have excluded the other-acts evidence because the probative value was substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion by admitting the evidence. *Hoskins*, 342 Mich App at 200.

Lastly, defendant argues that MCL 768.27a violates his rights to due process and a fair trial. Defendant appears to argue that MCL 768.27a violates his rights because it allows in propensity evidence, when that type of evidence has been generally ruled inadmissible. While MRE 404(b) has long barred the use of evidence of prior bad acts to prove the defendant's propensity to commit the charged offense, MCL 768.27a allows for the admission of other-acts evidence to prove the defendant's character and propensity. *Hoskins*, 342 Mich App at 201-202. Defendant contends that other-acts evidence under MCL 768.27a violates his right to due process and a fair trial because it jeopardizes the presumption of innocence. He appears to be arguing that MCL 768.27a results in unjust and dubious convictions. This Court rejected that argument in *People v Muniz*, 343 Mich App 437, 460-461; 997 NW2d 325 (2022):

> Defendant also argues that allowing the testimony of the complainant to include his alleged past acts of sexual abuse against her violated his due-process right to a fair trial because the "other acts" testimony served as evidence of defendant's propensity to commit the crime charged and allowed the jury to convict him on that basis. Although MCL 768.27a allows the jury to consider other acts of CSC as evidence of a defendant's character and propensity to commit CSC, it does not lower the quantum of proof or probative value of the evidence that the prosecution must present for conviction of the crime charged. For these reasons, it was not fundamentally unfair to allow the complainant to testify about defendant's other acts of CSC against her. [Citations omitted.]

This Court has declined to conclude that MCL 768.27a violates a defendant's rights to due process and a fair trial by lessening the prosecution's burden. For this reason, there is no merit to defendant's claim that MCL 768.27a is unconstitutional because it results in unjust or dubious convictions. Defendant therefore has not shown that plain error occurred because the trial court admitted evidence under MCL 768.27a.

Affirmed.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel